JUDGE MARRERO

NEW YORK
COUNTY CLERK'S OFFICE

DEC 18 2007

NOT COMPARED
WITH COPY FILE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARKUS KLINKO,

            Plaintiff,

-against-

MICHAEL BALL a/k/a MICHAEL F. BALL,

            Defendant.

---

07 CV 11362

NOTICE OF REMOVAL OF ACTION
PURSUANT TO 28 U.S.C. § 1441

TO THE HONORABLE JUDGES OF UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

PLEASE TAKE NOTICE that defendant Michael Ball ("Ball") hereby files this Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446 to remove this action from the Supreme Court of New York, County of New York, to this Court.

1. On or about October 17, 2007, plaintiff Markus Klinko ("Klinko") commenced this action in the Supreme Court of New York, County of New York, as Index No. 114055/07 (the "State Court Action"). A true and correct copy of the Summons and Complaint is attached hereto as Exhibit "A" and is incorporated herein by this reference.

2. The Complaint was served on Ball on or around November 19, 2007. Ball has not yet responded to the Complaint in the State Court Action, and his time to respond to the Complaint has not yet expired.

3. Removal of the State Court Action is based on diversity of citizenship. According to the Complaint, Klinko is a resident of the state of New York and Ball is a resident of the state of California.

4. The Complaint seeks an award in excess of $750,000.

Doc. #11767 v.1

5. In light of the foregoing, this Court has original jurisdiction over all claims pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Ball is the only named defendant in the State Court Action. Accordingly, no other parties join in this Removal.

7. This Court is the proper venue to which this case may be removed because the Southern District of New York is the judicial district in which the action is currently pending. 28 U.S.C. § 1441(a).

9. Removal of this case on the basis of diversity of citizenship is not precluded by the provisions of 28 U.S.C. § 1441(b) because none of the parties in interest properly joined and served as Defendants are citizens of the State of New York, the State in which this action was brought.

10. This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it has been filed within 30 days after the Defendants first received notice of the suit through service of process and could ascertain that it was removable.

11. Upon filing of this Notice of Removal, the Removing Defendants provided a copy to all parties of record and filed a copy with the Clerk of the Supreme Court of New York, County of New York.

Doc. #11767 v.1

Dated: New York, New York
       December 18, 2007

STEPTOE & JOHNSON LLP

By: _____
Michael C. Miller (MM 4632)
Evan Glassman (EG 9493)
Christopher J. Marino (CM 3219)
750 Seventh Avenue
Suite 1900
New York, NY 10019
(212) 506-3900

*Attorneys for Defendant
Michael Ball*

*Of Counsel:*
Michael R. Heimbold
Dylan Ruga
STEPTOE & JOHNSON LLP
2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067
(310) 734-3200

**CERTIFICATE OF SERVICE**

I do hereby certify that on this 18th day of December, 2007, I served a copy of the foregoing **Notice of Removal** on counsel for Plaintiff in the above-captioned matter via electronic mail and Federal Express.

Kimberlyn Brzozowski

Anthony A. LoPresti, Esq.
Meltzer LoPresti, LLP
30 Broad Street, 37th Floor
New York, New York 10004

# EXHIBIT A

Case 1:07-cv-11362-VM    Document 1    Filed 12/18/2007    Page 5 of 16

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
MARKUS KLINKO,

                      Plaintiff,

-against-

MICHAEL BALL a/k/a MICHAEL F. BALL,

                      Defendant.
-----------------------------------------------------------------X

Index No. 114055/07
Date Filed: 10/18/07

**SUMMONS AND COMPLAINT**

**TRIAL BY JURY DEMAND**

**TO THE ABOVE NAMED DEFENDANT:**

**YOU ARE HEREBY SUMMONED** to appear in the Supreme Court of the State of New York, County of New York, at the office of said Court at 60 Centre Street, and answer the Complaint in this action and to serve a copy of your Answer or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on Plaintiff's attorney within 20 days after the service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York). In case of your failure to answer or appear, judgment will be taken against you by default for the relief demanded in the accompanying Complaint.

The basis of the venue designated is the county in which the causes of action accrued, and where Plaintiff maintains his residence and principal place of business.

Dated: New York, New York
      October 17, 2007

                                          **MELTZER LoPRESTI, LLP**

                    By: __/s/_____
                          Anthony A. LoPresti, Esq.

                      *Attorneys for Plaintiff*
                      30 Broad Street, 37th Floor
                      New York, New York 10004
                      ph.: (212) 425-0551

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
MARKUS KLINKO,

                Plaintiff,

    -against-

MICHAEL BALL a/k/a MICHAEL F. BALL,

                Defendant.
-----------------------------------------------------------------X

Index No. 114055/07

Date Filed: 10/18/07

**COMPLAINT**

**TRIAL BY JURY DEMAND**

Plaintiff **MARKUS KLINKO**, by and through his attorneys, **MELTZER LoPRESTI, LLP**, as and for his complaint against Defendant **MICHAEL BALL** a/k/a **MICHAEL F. BALL**, alleges as follows:

### NATURE OF ACTION

1. This action arises from the wrongful and intentional acts of defendant Michael Ball, a/k/a Michael F. Ball ("Ball"), an individual, who is the highly visible CEO, founder and head designer of Rock & Republic Enterprises, Inc. ("Rock & Republic"), a manufacturer of denim jeans and apparel.

2. In furtherance of a plan to damage plaintiff Markus Klinko's reputation personally and professionally, and in furtherance of prior acts of intimidation, extortion and a threat to use his power and influence in the fashion industry to publicly embarrass and ruin plaintiff, defendant Ball did intentionally and maliciously issue false, reckless and defamatory statements about plaintiff to a worldwide fashion magazine.

3  Plaintiff brings this action to recover damages resulting from the intentional and wrongful acts of defendant and the damages resulting.

1

## THE PARTIES

4. Plaintiff Markus Klinko ("Klinko"), is an individual and resident of New York County. Klinko is an internationally known, high-end fashion/celebrity photographer, catering to numerous well-known actors, musicians and models in the entertainment industry, as well as international advertising campaigns and magazines.

5. Michael Ball a/k/a Michael F. Ball ("Ball"), is a resident of the State of California and is the CEO, founder and head designer of Rock & Republic Enterprises, Inc. ("Rock & Republic"), a manufacturer of clothing under the brand name "Rock & Republic".

## VENUE

6. In accordance with Rule 503 of the New York Civil Practice Law and Rules, venue is appropriate in this Court because the harm alleged herein occurred, in part, in New York County and because Plaintiff maintains his residence and principal place of business within New York County.

## STATEMENT OF FACTS

7. Plaintiff is a highly successful, internationally acclaimed, fashion/celebrity photographer who has become well known for his work with A-list actors, musicians and models in the entertainment industry, such as Jennifer Lopez, Britney Spears, Mariah Carey, Janet Jackson, Beyonce, David Bowie, Mary J. Blige, Kate Winslet, Lindsay Lohan and Keanu Reeves, among others, as well as major advertising campaigns for highly visible clients such as L'Oreal Paris, Pepsi, Hugo Boss, Nike, Elizabeth Arden, Baby Phat, and many others.

8 Plaintiff has successfully worked with numerous well-known magazines, including Condé Nast owned publications, such as GQ, Vanity Fair, Vogue and Tatler.

9. Defendant Ball, at all relevant times, was well aware of plaintiff's reputation in the fashion industry and the aforesaid persons and publications plaintiff has worked with.

10. Defendant Ball has openly and publicly praised plaintiff's work, even retaining plaintiff to perform services for Rock & Republic. In once instance defendant Ball declared in an interview:

> "I just wanted to say working with Markus and Indrani was amazing . . . they're the future of fashion, I mean I'm really stoked as a young company to be working with them and I think this is the beginning of greatness . . . honestly . . .".

11. In about January 2007, however, the relationship soured, and on about January 21, 2007, Ball threatened plaintiff that he would expend all of his power and influence to embarrass, humiliate, defame and professionally ruin plaintiff, and that he would use all of his influence and connections in the fashion industry to put plaintiff out of business.

12. On or about October 6, 2007, defendant Ball was interviewed by Andrew Harmon, the West Coast Editor for the highly acclaimed fashion/trade magazine "DNR" ("Defining Men's Fashion"; www.dnrnews.com ).

13. DNR magazine is considered "the industry standard for news, fashion trends and business strategies . . . the first read and last word for top-level executives." DNR reaches retailers, manufacturers, the media and the financial community "with an insider perspective that defines men's fashion and fuels the momentum of the industry." (http://www.dnrnews.com/site/about.php).

14. DNR is associated with Condé Nast Publications, a worldwide publisher in the fashion industry.

15. During his interview with DNR, in reference to plaintiff, defendant Ball stated: **"What do you say to a lunatic? How do you reason with somebody like that?"**

16. At said interview Ball also referred to plaintiff as **"Klinko on the brinko"**.

17. At said interview Ball also stated with reference to plaintiff: **"If you see this guy's rap sheet he's a scary guy."**

18. The aforesaid statements made by defendant Ball were intended to be a slur on plaintiff's character and reputation, namely, that plaintiff had a criminal and/or suspect past, that plaintiff has perpetrated illegal acts and/or broken the law.

19. The aforesaid statements made by defendant Ball were also intended to smear plaintiff's character and reputation, his honesty, integrity, virtue and competence, including the inference that plaintiff was inflicted with a mental illness needing treatment and/or was mentally unstable.

20. Defendant Ball deliberately sought to discredit plaintiff and hold him out for ridicule and humiliation.

21. Defendant's statements were false and defamatory.

22. Defendant, aware that his comments were to be published in DNR and on the internet, to be exposed to numerous persons in the fashion industry, made the aforesaid statements with the deliberate intent to maliciously embarrass, humiliate, defame and professionally ruin plaintiff, and to put plaintiff out of business.

23. In the October 15, 2007 issue of DNR, an article entitled "Rock Opera" stated as follows:

> "But 2007 hasn't exactly been a year of smooth sailing for Ball or his company, and he has several pending lawsuits to show for it. Depending on whom you

believe, he may or may not have thrown a full cocktail glass at former R&R designer Fred Naggar in a New York nightclub (Naggar is suing for breach of contract and assault, among other allegations). He may or may not have made repeated and unwanted advances at former assistant Nicole Baros, or blackmailed Markus Klinko with sexually explicit photos of the New York fashion photographer with Ball's ex-fiance, model/actress Fernanda Romero.

The suits, however, seem about as worrying to Ball as a trio of flies. He lovingly refers to Klinko as "Klinko on the brinko": "What do you say to a lunatic? How do you reason with somebody like that? If you see this guy's rap sheet he's a scary guy. For me, I say bring it on. But I also have my company and my employees to think about here."

(Exhibit "A"). Said article was simultaneously published on the internet at the website address:

http://www.dnrnews.com/site/article.php?id=759 .

24. Upon information and belief, defendant Ball has made numerous similar defamatory statements to third parties.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Defamation)

25. Plaintiff incorporates paragraphs "1" through "24", above by reference.

26. By making these false and defamatory statements, defendant was motivated by actual malice and wrongfully and/or willfully and/or recklessly intended to injure plaintiff both personally and professionally.

27. Defendant published his defamatory statements to a third party aware that such statements were to be published worldwide.

28. Defendant's statements are defamatory in that they are injurious to plaintiff's character, reputation and business interests, and thereby expose plaintiff to public ridicule, contempt, scorn, shame, disgrace, discredit and/or ostracism.

29. Defendant's statements constitute defamation *per se*.

5

30.  By reason of defendant's false and defamatory statements, plaintiff was and continues to be injured in character, reputation and business interests and suffered great pain and mental anguish, all to his damage, in an amount to be determined at trial but not less than Fifty Million Dollars ($ 50,000,000).

31.  Due to the actual malice displayed by defendant, in that defendant knew his statements were false and defamatory, and that such statements were made solely to harm plaintiff, plaintiff demands punitive damages in the amount of Fifty Million Dollars ($50,000,000).

## AS AND FOR A SECOND CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

32.  Plaintiff incorporates paragraphs "1" through "31", above by reference.

33.  Defendant Ball intentionally and deliberately inflicted emotional distress on plaintiff by defaming him to a worldwide publication, including peers within the industry he is employed by.

34.  Defendant Ball acted with malice, and with the intent to cause severe emotional distress to plaintiff Klinko and/or in deliberate disregard of the high probability that severe emotional distress to Klinko would result.

35.  As a result of defendant's extreme and outrageous conduct, plaintiff was, is, and, with a high degree of likelihood, will continue to be emotionally distressed.

36.  As a result of defendant's extreme and outrageous conduct, plaintiff has suffered and will continue to suffer mental pain and anguish, severe emotional trauma, embarrassment, and humiliation.

37.  By reason of the foregoing and as a direct and proximate result of defendant

Ball's conduct, plaintiff Klinko is entitled to compensatory and punitive damages against defendant Ball in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

a. Declaring that the acts and practices complained of herein are in violation of the laws of the State of New York;

b. Enjoining and permanently restraining these violations;

c. Directing Defendant to pay compensatory and punitive damages to Plaintiff in an amount to be proven at trial, presently believed to be in excess of Fifty Million Dollars ($50,000,000), with interest at the statutory rate;

d. Awarding Plaintiff costs, disbursements and reasonable attorneys' fees; and

e. Such other and further relief as the Court may deem just and proper.

Dated:   New York, New York
         October 17, 2007
                        Respectfully submitted,

                        **MELTZER LoPRESTI, LLP**


              By:    _/s/_____
                     Anthony A. LoPresti

                     30 Broad Street, 37th Floor
                     New York, New York 10004
                     (212) 425-0551
                     *Attorneys for Plaintiff*

**Exhibit "A"**

**Exhibit "A"**

**D STRATEGIES | ROCK & REPUBLIC**

# ock Opera

:hael Ball, the man
ıd Rock & Republic,
:sn't mind creating
while building one
most recognizable
xury denim brands

**BY ANDREW HARMON**



"Without a doubt, we were the best [at New York Fashion Week]. When we do a show, we go all-out. Nothing's held back." —Michael Ball

**LOS ANGELES —** It's no surprise that Michael Ball is so widely reviled in the luxury denim business.

With all the aplomb and delusion of a despot, the Rock & Republic founder and CEO is as infamous for taking swipes at his rivals as he is for vaunting his runway shows as seminal milestones in contemporary fashion.

As he tells it, True Religion mastermind Jeffrey Lubell is an artless hack. The fit on a pair of 7 For All Mankind jeans is abominable. And don't forget that R&R's collection of Studio 54-inspired suits at New York Fashion Week last month beat the pants off critically touted shows, namely Marc Jacobs: "Without a doubt, we were the best. When we do a show, we go all-out. Nothing's held back," he says. "It's about reiterating, frankly, how cool the brand is." In a world where few designers function without finely tuned PR machines soft-pedaling every quip, his self-possessed candor is often as refreshing as it is offensive.

The brands he so frequently slights rarely return serve. "We would prefer not to comment specifically on Michael," says Leilani Augustine, vice-president of marketing for 7. "What I will say is that our sales speak for themselves... We remain the leader by more than two times in the category and are very happy with the position we are in."

That there is no love lost between Ball and many of L.A.'s denim power players seemed of little import as he spoke with DNR at his swank, high-ceilinged Culver City headquarters—a marked contrast to the gritty digs of other local labels like Monarchy and J Brand. Instead, the recent CFDA inductee, clad in a Rock & Republic jacket of his design, had empire-building on his mind. Like many premium denim kingpins attempting to transform their companies from jeans makers into lifestyle juggernauts, Ball sees salvation in direct retail. Lots of it.

"For the full range of this collection to be expressed and exposed, it's critical," he explains of his plans for branded stores. "For most denim companies in this world, absolutely it's difficult. Neither True Religion, nor 7, nor Citizens [of Humanity] will be a lifestyle brand or a fashion house... but for Rock & Republic, it's just a natural progression, right?"

Already carried by more than 500 stores worldwide, the five-year-old label is opening its first branded door early next year, located next to Spanish shoemaker Camper on L.A.'s Robertson Boulevard. Two others are slated to open next year, one in Soho, the other at the Wynn Las Vegas. (Ball said Wynn's wife, Elaine, is a rabid R&R fan and was instrumental to bringing the label to the hotel's high-end shops, which include Dior, Chanel and Manolo Blahnik.)

And then there's his wish list. Among the stores he wants to open worldwide in the next two years are doors on Rodeo Drive in Beverly Hills, Post Street in San Francisco, Michigan Avenue in Chicago and yet-to-be-decided locations in Paris, Spain, Canada and Japan. Ball predicts 50 locations in two years, all of which will highlight Rock & Republic's non-denim offerings, including slim-fit blazers, polos, leather shoes and studded belts. Men's wear now accounts for 30 percent of Rock & Republic's overall sales.

Consider Ball's convictions, his celebrity connections and his robust sales, which he professes total in the "hundreds of millions," and it's hard to write off his ambition. Even the more fanciful goals in his long-term business plan—an airline and a hotel chain, for starters—have a faint ring of possibility when explained by a former commercial actor who claims to have had no fashion design experience prior to launching what is now a top-10 premium denim brand.

But 2007 hasn't exactly been a year of smooth sailing for Ball or his company, and he has several pending lawsuits to show for it. Depending on whom you believe, he may or may not have thrown a full cocktail glass at former R&R designer Fred Naggar in a New York nightclub (Naggar is suing for breach of contract and assault, among other allegations). He may or may not have made repeated and unwanted advances at former assistant Nicole Baros, or blackmailed Markus Klinko with sexually explicit photos of the New York fashion photographer with Ball's ex-fiance, model/actress Fernanda Romero.

The suits, however, seem about as worrying to Ball as a trio of flies. He lovingly refers to Klinko as "Klinko on the brinko": "What do you say to a lunatic? How do you reason with somebody like that? If you see this guy's rap sheet he's a scary guy. For me, I say bring it on. But I also have my company and my employees to think about here."

Klinko isn't holding his tongue, either. "This will be known as the biggest scandal in American fashion. When you look at the people he's comparing himself to, from Calvin Klein on, to have someone of his character in this industry is just a shame," he says. "Everything that's in this lawsuit is 100 percent true." ■



# Rock Opera

BY ANDREW HARMON
Oct. 15, 2007

LOS ANGELES — It's no surprise that Michael Ball is so widely reviled in the luxury denim business. With all the aplomb and delusion of a despot, the Rock & Republic founder and CEO is as infamous for taking swipes at his rivals as he is for vaunting his runway shows as seminal milestones in contemporary fashion.

As he tells it, True Religion mastermind Jeffrey Lubell is an artless hack. The fit on a pair of 7 For All Mankind jeans is abominable. And don't forget that R&R's collection of Studio 54–inspired suits at New York Fashion Week last month beat the pants off critically touted shows, namely Marc Jacobs: "Without a doubt, we were the best. When we do a show, we go all-out. Nothing's held back," he says. "It's about reiterating, frankly, how cool the brand is." In a world where few designers function without finely tuned PR machines soft-pedaling every quip, his self-possessed candor is often as refreshing as it is offensive.

The brands he so frequently slights rarely return serve. "We would prefer not to comment specifically on Michael," says Leilani Augustine, vice-president of marketing for 7. "What I will say is that our sales speak for themselves ... We remain the leader by more than two times in the category and are very happy with the position we are in."

That there is no love lost between Ball and many of L.A.'s denim power players seemed of little import as he spoke with DNR at his swank, high-ceilinged Culver City headquarters—a marked contrast to the gritty digs of other local labels like Monarchy and J Brand. Instead, the recent CFDA inductee, clad in a Rock & Republic jacket of his design, had empire-building on his mind. Like many premium denim kingpins attempting to transform their companies from jeans makers into lifestyle juggernauts, Ball sees salvation in direct retail. Lots of it.

"For the full range of this collection to be expressed and exposed, it's critical," he explains of his plans for branded stores. "For most denim companies in this world, absolutely it's difficult. Neither True Religion, nor 7, nor Citizens [of Humanity] will be a lifestyle brand or a fashion house ... but for Rock & Republic, it's just a natural progression, right?"

Already carried by more than 500 stores worldwide, the five-year-old label is opening its first branded door early next year, located next to Spanish shoemaker Camper on L.A.'s Robertson Boulevard. Two others are slated to open next year, one in Soho, the other at the Wynn Las Vegas. (Ball said Wynn's wife, Elaine, is a rabid R&R fan and was instrumental to bringing the label to the hotel's high-end shops, which include Dior, Chanel and Manolo Blahnik.)

And then there's his wish list. Among the stores he wants to open worldwide in the next two years are doors on Rodeo Drive in Beverly Hills, Post Street in San Francisco, Michigan Avenue in Chicago and yet-to-be-decided locations in Paris, Spain, Canada and Japan. Ball predicts 50 locations in two years, all of which will highlight Rock & Republic's non-denim offerings, including slim-fit blazers, polos, leather shoes and studded belts. Men's wear now accounts for 30 percent of Rock & Republic's overall sales.

Consider Ball's convictions, his celebrity connections and his robust sales, which he professes total in the "hundreds of millions," and it's hard to write off his ambition. Even the more fanciful goals in his long-term business plan—an airline and a hotel chain, for starters—have a faint ring of possibility when explained by a former commercial actor who claims to have had no fashion design experience prior to launching what is now a top-10 premium denim brand.

But 2007 hasn't exactly been a year of smooth sailing for Ball or his company, and he has several pending lawsuits to show for it. Depending on whom you believe, he may or may not have thrown a full cocktail glass at former R&R designer Fred Naggar in a New York nightclub (Naggar is suing for breach of contract and assault, among other allegations). He may or may not have made repeated and unwanted advances at former assistant Nicole Baros, or blackmailed Markus Klinko with sexually explicit photos of the New York fashion photographer with Ball's ex-fiance, model/actress Fernanda Romero.

The suits, however, seem about as worrying to Ball as a trio of flies. He lovingly refers to Klinko as "Klinko on the brinko": "What do you say to a lunatic? How do you reason with somebody like that? If you see this guy's rap sheet he's a scary guy. For me, I say bring it on. But I also have my company and my employees to think about here."

Klinko isn't holding his tongue, either. "This will be known as the biggest scandal in American fashion. When you look at the people he's comparing himself to, from Calvin Klein on, to have someone of his character in this industry is just a shame," he says. "Everything that's in this lawsuit is 100 percent true."



PHOTO BY TYLER BOYE

