UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------

MARKUS KLINKO,

                  Plaintiff,

     -against-

MICHAEL BALL a/k/a MICHAEL F. BALL,

                 Defendant.

-----------------------------------------------

Case No. 07 CV 11362 (VM) (HP)

(Oral Argument Requested)

# DEFENDANT MICHAEL BALL'S
## MEMORANDUM OF LAW IN SUPPORT OF HIS
### MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER

STEPTOE & JOHNSON LLP
Michael C. Miller
Evan Glassman
Lenor C. Marquis
750 Seventh Avenue
Suite 1900
New York, NY 10019
(212) 506-3900

*Attorneys for Defendant*
*Michael Ball*

*Of Counsel:*
Michael R. Heimbold
Dylan Ruga
STEPTOE & JOHNSON LLP
2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067
(310) 734-3200

December 26, 2007

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................1

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ..............................................................................................2

POINT I  PLAINTIFF'S FIRST CAUSE OF ACTION FOR DEFAMATION
FAILS AS A MATTER OF LAW ....................................................................4

      A.     Alleged Statement No. 1 .........................................................................6

      B.     Alleged Statement No. 2 .........................................................................8

      C.     Alleged Statement No. 3 .......................................................................10

             1.    Alleged Statement No. 3 is Incapable of Defamatory Meaning ...........10

             2.    Alleged Statement No. 3 is Loose, Figurative Speech That
                 Constitutes Protected Opinion ...............................................................12

      D.     The Alleged Statements Are Not Defamatory *Per se* .........................14

POINT II  PLAINTIFF'S SECOND CAUSE OF ACTION FOR INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS FAILS AS A MATTER OF
LAW ...............................................................................................................16

POINT III  IF THE CASE IS NOT DISMISSED, IT SHOULD BE
TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA ..................17

CONCLUSION .............................................................................................................19

Doc. # CC-174191 v.2

## TABLE OF AUTHORITIES

### FEDERAL CASES

Anyanwu v. Columbia Broad Sys., Inc.,
    887 F. Supp. 690 (S.D.N.Y. 1995) .......................................................................16

Cartier v. D & D Jewelry Imports,
    510 F. Supp. 2d 344 (S.D.N.Y. 2007)............................................................ 17-18

Celle v. Filipino Reporter Enters., Inc.,
    209 F.3d 163 (2d Cir. 2000)..................................................................... 4, 9, 14-15

Chaiken v. VV Publ'g Corp.,
    907 F. Supp. 689 (S.D.N.Y. 1995) .......................................................................16

Cianci v. New York Times Publ'g Co.,
    639 F.2d 54 (2d Cir. 1980)..............................................................................6, 13

Citigroup, Inc. v. City Holding Co.,
    97 F. Supp. 2d 549 (S.D.N.Y. 2000)....................................................................17

D.H. Blair & Co., Inc. v. Gottdiener,
    462 F.3d 95 (2d Cir. 2006)...................................................................................17

E.E.O.C. v. Die Fliedermaus,
    77 F. Supp. 2d 460 (S.D.N.Y. 1999)....................................................................16

Greenbelt Coop. Publ'g Ass'n v. Bresler,
    398 U.S. 6, 90 S. Ct. 1537 (1970) .................................................................. 12-13

Hustler Magazine, Inc. v. Falwell,
    485 U.S. 46 (1988)...............................................................................................16

Lauderback v. Am. Broad. Cos.,
    741 F.2d 193 (8th Cir. 1984) ...............................................................................13

Letter Carriers v. Austin,
    418 U.S. 264, 94 S. Ct. 2770 (1974) .............................................................. 12-13

Levin v. McPhee,
    119 F.3d 189 (2d Cir. 1997)...............................................................................11

New York Times Co. v. Sullivan,
    376 U.S. 254, 84 S. Ct. 710 (1964).......................................................................5

Rizzuto v. Nexxus Prods. Co.,
    641 F. Supp. 473 (S.D.N.Y. 1986) ..................................................................7, 10

STATE CASES

Armstrong v. Simon & Schuster, Inc.,
   85 N.Y.2d 373 (1995) .................................................................................................9

Depuy v. St. John Fisher College,
   129 A.D.2d 972, 514 N.Y.S.2d 286 (4th Dep't 1987).......................................7, 10

Dillon v. City of New York,
   261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dep't 1999) .............................................4, 6

Galasso v. Saltzman,
   42 A.D.3d 310, 839 N.Y.S.2d 731 (1st Dep't 2007) .......................................14, 16

Goetz v. Kunstler,
   164 Misc. 2d 557 (Sup. Ct. N.Y. County 1995) .......................................................4

Gross v. New York Times Co.,
   82 N.Y.2d 146 (1993) ..................................................................................... Passim

Huggins v. Moore,
   253 A.D.2d 297, 689 N.Y.S.2d 21 (1st Dep't 1999), rev'd on other grounds, 94
   N.Y.2d 296 (1999) ...................................................................................................12

Immuno AG v. Moor-Jankowski,
   77 N.Y.2d 235 (1991) .............................................................................................4, 6

Jaszai v. Christie's,
   279 A.D.2d 186, 719 N.Y.S.2d 235 (1st Dep't 2001) .............................................8

Keeler v. Galaxy Comms., LP,
   39 A.D.3d 1202, 834 N.Y.S.2d 411 (4th Dep't 2007).............................................4

Klepetko v. Reisman,
   41 A.D.3d 551, 839 N.Y.S.2d 101 (2d Dep't 2007) ..........................................7, 10

Lacher v. Engel,
   33 A.D.3d 10, 817 N.Y.S.2d 37 (1st Dep't 2006) ...................................................8

Liberman v. Gelstein,
   80 N.Y.2d 429 (1992) ........................................................................................14-15

Millus v. Newsday, Inc.,
   89 N.Y.2d 840 (1996) ...............................................................................................5

November v. Time Inc.,
   13 N.Y.2d 175 (1963) ...............................................................................................9

Penn Warranty Corp. v. DiGiovanni,
    10 Misc. 3d 998 (Sup. Ct. N.Y. County 2005) ...................................................... 4-7

Ram v. Moritt,
    205 A.D.2d 516, 612 N.Y.S.2d 671 (2d Dep't 1994) ....................................... 15-16

Silverman v. Clark,
    35 A.D.3d 1, 822 N.Y.S.2d 9 (1st Dep't 2006) ....................................................5

Versaci v. Richie,
    30 A.D.3d 648, 815 N.Y.S.2d 350 (3d Dep't 2006) ..............................................4

## FEDERAL STATUTES & RULES

28 U.S.C. § 1391(a) (2000)..............................................................................17

28 U.S.C. § 1404(a) (2000)............................................................. 1-2, 17, 19

Fed. R. Civ. P. 12(b)(6)..............................................................................1, 19

## OTHER AUTHORITIES

W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 112 (5th ed. 1984) ................15

## INTRODUCTION

Defendant Michael Ball ("Mr. Ball") respectfully moves this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to enter an order dismissing the Complaint of Markus Klinko ("Plaintiff" or "Mr. Klinko"). In the alternative, Mr. Ball respectfully moves the Court, pursuant to 28 U.S.C. § 1404(a) (2000), to transfer this action to the Central District of California.

## PRELIMINARY STATEMENT

The instant lawsuit is the second filed this year by Mr. Klinko against Mr. Ball, both of which ultimately relate to a failed commercial relationship between the parties. Mr. Klinko's first lawsuit was determined to be baseless and was dismissed summarily without leave to amend. Request for Judicial Notice ("RJN") ¶ 3, Ex. C. This case is simply another chapter in Mr. Klinko's campaign to discredit Mr. Ball; it also lacks any legal or factual merit and should be dismissed in its entirety.

This lawsuit is based on three consecutive statements allegedly made by Mr. Ball about Mr. Klinko to a news reporter for a men's fashion publication called "DNR." The statements are:

1.    "Klinko on the brinko";

2.    "What do you say to a lunatic? How do you reason with somebody like that?"; and

3.    "If you see this guy's rap sheet he's a scary guy."

(the three statements collectively are referred to as the "Alleged Statements").

Because each of the Alleged Statements is protected by the First Amendment to the United States Constitution, they must be dismissed as a matter of law. Indeed, courts in New

York regularly have held that other similar statements are non-actionable and, for reasons explained below, the same is true in the instant case.

## STATEMENT OF FACTS

The instant lawsuit is the latest round in Mr. Klinko's well orchestrated campaign to destroy Mr. Ball's reputation and business. Mr. Klinko's first lawsuit, which stemmed from Mr. Klinko's displeasure that Mr. Ball did not use Mr. Klinko's photographs in an ad campaign, was filed in the Supreme Court of New York on January 24, 2007 (the "First Lawsuit"). RJN ¶ 1, Ex. A. That lawsuit accused Mr. Ball and his company, Rock & Republic Enterprises, Inc. ("R&R"), of: extortion, tortious interference with prospective business relations, *prima facie* tort, intentional infliction of emotional distress, breach of contract, and unjust enrichment. Id. Mr. Klinko included in the First Lawsuit, among other things, spurious accusations that Mr. Ball had participated in a fraudulent marriage, references to Mr. Ball's therapy sessions concerning his own sexuality, and allegations that Mr. Ball engaged in immigration fraud and other irrelevant, but highly prejudicial, conduct. Id. On or about July 20, 2007, the court in the First Lawsuit granted Mr. Ball's motion to strike these statements as scandalous, prejudicial, and irrelevant to the action. RJN ¶ 2, Ex. B. Less than four months later, on November 14, 2007, the court ruled that each of Mr. Klinko's claims lacked merit and dismissed the First Lawsuit without leave to amend. Id., ¶ 3, Ex. C.

On October 15, 2007, a men's fashion publication called "DNR" published an article featuring Mr. Ball ("DNR Article"). Complaint, Ex. A. The DNR Article discusses the success of R&R and Mr. Ball's brash persona before addressing three lawsuits that were filed against Mr. Ball in the prior year, including the First Lawsuit, which was pending at the time the article was published. Id. The Alleged Statements appear as part of the DNR Article's description of Mr. Ball's reaction to the prior lawsuits, as follows:

- 2 -

The suits, however, seem about as worrying to Ball as a trio of flies. He lovingly refers to Klinko as "Klinko on the Brinko"; "What do you say to a lunatic? How do you reason with somebody like that? If you see this guy's rap sheet he's a scary guy. For me, I say bring it on. But I also have my company and my employees to think about here."

The DNR Article continues with Mr. Klinko's response:

Klinko isn't holding his tongue, either. "This will be known as the biggest scandal in American Fashion. When you look at the people he's comparing himself to, from Calvin Klein on, to have someone of his character in this industry is just a shame," he says.

Notwithstanding Mr. Klinko's own attack on Mr. Ball in the DNR article, Mr. Klinko filed the instant Complaint in New York state court on October 18, 2007 ("Complaint"). The Complaint asserts causes of action for defamation and intentional infliction of emotional distress arising out of the Alleged Statements attributed to Mr. Ball in the DNR article. Complaint ¶¶ 15-17, 25-37. Seizing on yet another opportunity to bolster his own reputation and drop the names of his "A-list" clients, and removing any doubt that he is a public figure of epic proportions, Mr. Klinko characterizes himself in his Complaint as "a highly successful, internationally acclaimed, fashion/celebrity photographer who has become well known for his work with A-list actors, musicians and models in the entertainment industry, such as Jennifer Lopez, Britney Spears, Mariah Carey, Janet Jackson, Beyonce, . . . among others, as well as major advertising campaigns for highly visible clients such as L'Oreal Paris, Pepsi, Hugo Boss . . . and many others." Complaint ¶ 7. Mr. Klinko claims that, as a result of the Alleged Statements, he has suffered damage to his reputation in an amount "not less than Fifty Million Dollars (\$ 50,000,000)." Id. ¶ 30. Plaintiff seeks another \$50,000,000 in punitive damages from Mr. Ball. Id. ¶ 31.

Tellingly, while Mr. Klinko does take the time to tout his fame and clientele in his Complaint, his true motives in bringing this case are evidenced by the fact that he has *not* named

- 3 -

as a defendant DNR - the company responsible for publishing the Alleged Statements. Nor is there any indication that he has sought a retraction of the Alleged Statements or the allegedly defamatory article in which they appear.

## ARGUMENT

### POINT I

### PLAINTIFF'S FIRST CAUSE OF ACTION FOR DEFAMATION FAILS AS A MATTER OF LAW

Under New York law, a defamation claim is made where there is a : (1) "a false statement," (2) "published without privilege or authorization to a third party," (3) "constituting fault as judged by, at a minimum, a negligence standard," and (4) "it must either cause special harm or constitute defamation *per se*." Dillon v. City of New York, 261 A.D.2d 34, 38, 704 N.Y.S.2d 1, 5 (1st Dep't 1999); Celle v. Filipino Reporter Enters., Inc., 209 F.3d 163, 176 (2d Cir. 2000). New York courts frequently dismiss allegations of defamation where claimants, such as Plaintiff in the instant case, fail to plead these elements. See e.g., Keeler v. Galaxy Comms., LP, 39 A.D.3d 1202, 834 N.Y.S.2d 411 (4th Dep't 2007) (dismissing complaint because the plaintiff did not plead the defendant's "exact words"); Versaci v. Richie, 30 A.D.3d 648, 815 N.Y.S.2d 350 (3d Dep't 2006) (dismissing complaint based on a statement that the plaintiff was a "so called attorney" as personal opinion and rhetorical hyperbole).

Moreover, under New York law, the challenged statement must be one of fact, not opinion. Immuno AG v. Moor-Jankowski, 77 N.Y.2d 235, 254 (1991); Gross v. New York Times Co., 82 N.Y.2d 146, 153 (1993); Penn Warranty Corp. v. DiGiovanni, 10 Misc. 3d 998, 1003-04 (Sup. Ct. N.Y. County 2005). In determining whether a statement is fact or opinion, "the key inquiry is whether the challenged expression . . . would reasonably appear to imply assertions of objective fact." Immuno AG, 77 N.Y.2d at 243; Goetz v. Kunstler, 164 Misc. 2d

Doc. # CC-174191 v.2

557, 561 (Sup. Ct. N.Y. County 1995).  Put differently, the "dispositive inquiry . . . is whether a reasonable reader could have concluded that the articles were conveying *facts* about the plaintiff."  Gross, 82 N.Y.2d at 152 (emphasis added).

Under Gross, New York Courts consider three factors when deciding whether a statement is fact or opinion:

> (1) whether the specific language in issue has a precise meaning which
> is readily understood; (2) whether the statements are capable of being proven
> true or false; and (3) *whether either the full context of the communication in*
> *which the statement appears or the broader social context and surrounding*
> *circumstances are such as to signal readers or listeners that what is being read*
> *or heard is likely to be opinion, not fact.*

Id., 82 N.Y.2d at 153 (emphasis added); DiGiovanni, 10 Misc. 3d at 1005.

The issue of whether a statement is one of fact or nonactionable opinion is, in the first instance, a question of law for the Court that may be resolved on a motion to dismiss.  Silverman v. Clark, 35 A.D.3d 1, 14, 822 N.Y.S.2d 9, 19 (1st Dep't 2006); Millus v. Newsday, Inc., 89 N.Y.2d 840, 842 (1996).

Because Mr. Klinko is by his own admission an "internationally acclaimed" public figure, this action is governed by the constitutional principles enunciated in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S. Ct. 710 (1964).  Thus to prevail, Mr. Klinko must prove not only the falsity of the Alleged Statements, but he also must establish by clear and convincing evidence that in making the Alleged Statements, Mr. Ball acted with "actual malice."

As set forth below, each of the Alleged Statements clearly constitutes an opinion (not fact), and therefore must be dismissed on that basis as a matter of law.

A.    **Alleged Statement No. 1**

According to the DNR Article, Mr. Ball "lovingly" referred to Plaintiff as "Klinko on the brinko." Complaint ¶ 16.  Ignoring for a moment the context in which it appears, this rhyming statement cannot be defamatory because it is entirely ambiguous and is not a statement of fact. Even assuming ordinary readers would understand "on the brinko" to mean that Mr. Klinko is "on the brink" of something, it is unclear what Mr. Klinko is on the brink of—success?  fortune? insanity?  fame?  poverty?  Merely saying that someone is "on the brink" of something has no precise meaning and is incapable of being proven true or false.  The first two <u>Gross</u> factors, therefore lead to the conclusion that Alleged Statement No. 1 is nonactionable opinion.

The third <u>Gross</u> factor—the context in which the statement appears—resolves any doubt that Alleged Statement No. 1 is merely rhetorical hyperbole and protected opinion.  Specifically, the sentence in which Alleged Statement No. 1 appears states that Mr. Ball "<u>lovingly</u> refers to Klinko as 'Klinko on the brinko.'"  Complaint, Ex. A (emphasis added).  The article's qualification and context provide a clear signal to its readers that the alleged statement was not being offered as fact, but merely was attributing Ball with sharing an amusing "pet name" for Mr. Klinko.  This type of teasing is no different than the behavior of children on a schoolyard. Mr. Klinko may not enjoy being teased, but the words certainly are not defamatory, especially given Mr. Klinko's international fame.  <u>Cianci v. New York Times Publ'g Co.</u>, 639 F.2d 54, 64 (2d Cir. 1980) ("[a] pejorative statement of opinion concerning a public figure generally is constitutionally protected . . . no matter how vigorously expressed;") <u>Dillon</u>, 261 A.D.2d at 38, 704 N.Y.S.2d at 5 ("Loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable."); <u>Gross</u>, 82 N.Y.2d at 152-53; <u>Immuno AG</u>, 77 N.Y.2d at 244.  If people were liable every time they teased someone, free speech would be chilled to an unimaginable degree.  Clearly, the law of defamation was not intended to go so far.

- 6 -

For example, in <u>Depuy v. St. John Fisher College</u>, 129 A.D.2d 972, 514 N.Y.S.2d 286 (4th Dep't 1987), the defendant stated: "I frankly am too busy for that kind of nonsense. It just reaches a point when you don't pay attention to a clown." <u>Depuy</u>, 129 A.D. at 972. The plaintiff sued for defamation based on the comment that the plaintiff was "a clown." The court dismissed the complaint on summary judgment because the defendant's reference to the plaintiff "as a 'clown' amounted to *no more than name-calling or a general insult*, a type of epithet not to be taken literally and not deemed injurious to reputation." <u>Id</u>. at 972 (emphasis added).

Similarly, in <u>Klepetko v. Reisman</u>, 41 A.D.3d 551, 551-52, 839 N.Y.S.2d 101, 102-03 (2d Dep't 2007), the court held that the defendant's statements that the plaintiff was "cowardly" and an "idiotic menace" were nothing more than name-calling and should not be taken literally. <u>Klepetko</u>, 41 A.D.3d at 552. Accordingly, the court dismissed the plaintiff's libel claim.

In <u>Rizzuto v. Nexxus Prods. Co.</u>, 641 F. Supp. 473 (S.D.N.Y. 1986), the Court held that "the use of such terms as "unscrupulous sales people," "lying salesperson," "conned" and "rip off" are expressions of opinion . . . ." <u>Id</u>. at 481. "If, as the New York State Court of Appeals noted, to refer to a Judge as unfit and incompetent, even in the form of pejorative rhetoric is an expression of opinion, it is difficult to hold otherwise with respect to 'lying,' 'conned,' 'unscrupulous sales people' and 'rip you off' taken in context with other statements in the advertisement." <u>Id</u>. at 482.

In the instant case, Alleged Statement No. 1 must be dismissed because it amounts to nothing more than mere name-calling and should not be taken literally. Furthermore, the statement is protected opinion because: (1) it has no precise meaning, (2) it is incapable of being proven true or false, and (3) the context of the article signals to the readers that the statement is not intended to be a statement of fact. <u>Gross</u>, 82 N.Y.2d at 153; <u>DiGiovanni</u>, 10 Misc. 3d at

 Doc. # CC-174191 v.2

1005; Lacher v. Engel, 33 A.D.3d 10, 16, 817 N.Y.S.2d 37, 42 (1st Dep't 2006) (holding that

defendant's statement that plaintiff was a "pathological character" was opinion and thus not

actionable); Jaszai v. Christie's, 279 A.D.2d 186, 188-89, 719 N.Y.S.2d 235, 237-38 (1st Dep't

2001) (holding that defendant's statement that: "I have no reason to take this man seriously" was

protected opinion). It follows that Mr. Klinko's claim as to Alleged Statement No. 1 must be

dismissed.

**B.    Alleged Statement No. 2**

Alleged Statement No. 2 also is protected opinion. Here, Mr. Klinko complains that Mr.

Ball allegedly stated: "What do you say to a lunatic? How do you reason with somebody like

that?" Complaint ¶ 15. From the Complaint, it appears Mr. Klinko is complaining that this

gives rise to "the inference that plaintiff was inflicted with a mental illness needing treatment

and/or was mentally unstable." Complaint ¶ 19. Even if this were true, Alleged Statement No. 2

is clearly rhetorical hyperbole and protected opinion, and can not give rise to liability under New

York law.

In Lacher, *supra*, the defendant called the plaintiff a "thief," a "liar," and a "pathological

character." Lacher, 33 A.D.3d at 16, 817 N.Y.S.2d at 42. The court held that the defendant's

statement that the plaintiff was "a pathological character" was not actionable because "as

expressed by a lay, non-medical individual it does not convey any meaning." Id. Therefore,

according to the court, the statement "is more accurately characterized as an opinion, and thus

not actionable." Id.

Mr. Ball's alleged statement that Mr. Klinko is "a lunatic" is very similar to the statement

in Lacher that the plaintiff was "a pathological character." Here, as in that case, the allegedly

defamatory statement was not meant to convey an objective medical opinion that Mr. Klinko is

Doc. # CC-174191 v.2

in fact a lunatic or insane; rather, it was simply a loose, figurative term to express Mr. Ball's

opinion that Mr. Klinko shares different views than him.

Of course, the context of the statement must be considered. Celle, 209 F.3d at 177

("[C]ourts must give the disputed language a fair reading in the context of the *publication as a*

*whole.* Challenged statements are not to be read in isolation, but must be perused as the average

reader would against the whole apparent scope and intent of the writing.") (emphasis added)

(internal citations and quotation marks omitted); Armstrong v. Simon & Schuster, Inc., 85

N.Y.2d 373, 380 (1995); November v. Time Inc., 13 N.Y.2d 175, 178-79 (1963).

Here, Mr. Ball's alleged statement was made *after* the following passage from the DNR

Article:

> But 2007 hasn't exactly been a year of smooth sailing for
> Ball or his company, and he has several pending lawsuits to show for it.
> Depending on whom you believe . . . [h]e may or may not have . . .
> blackmailed Markus Klinko with sexually explicit photos of the New
> York fashion photographer with Ball's ex-fiance, model/actress Fernanda
> Romero.
>     The suits, however, seem about as worrying to Ball as a trio of
> flies. He lovingly refers to Klinko as "Klinko on the brinko": "What do
> you say to a lunatic? How do you reason with somebody like that? . . . .

Complaint, Ex. A.

Mr. Klinko responded to these remarks in the article's very next paragraph. According to

Mr. Klinko, the First Lawsuit was "the biggest scandal in American fashion." Complaint, Ex. A.

This statement further signals to the readers that the parties' statements are rhetorical and

hyperbolic exaggerations because Mr. Klinko's previous lawsuit, which arose out of a $37,500

contract dispute, clearly is not the biggest scandal in American fashion.

In any event, the context presented in the DNR Article makes it plain to a reasonable

reader of this men's fashion publication that neither the Alleged Statements, nor Mr. Klinko's

comments, should be considered statements of verifiable fact. The Alleged Statements are

clearly offered as Mr. Ball's opinions of Mr. Klinko and the First Lawsuit, which Mr. Ball – and

the New York Supreme Court - felt was without merit.

Finally, as discussed above, mere name-calling is not actionable. Depuy, 129 A.D. at

972; Klepetko, 41 A.D.3d at 552; Rizzuto, 641 F. Supp at 481, 482. It follows that Mr. Ball's

alleged reference to Mr. Klinko as "a lunatic" amounts to nothing more than rhetorical hyperbole

and nonactionable name-calling in the context of an ongoing dispute.   It follows that Alleged

Statement No. 2 is a statement of opinion, not fact, and therefore not actionable.

C.     **Alleged Statement No. 3**

The third and final allegedly defamatory statement made by Mr. Ball was: "If you see this

guy's rap sheet he's a scary guy."  Complaint ¶ 17.  Mr. Klinko apparently contends that this

statement is defamatory because it implies he has a "criminal and/or suspect past."  Complaint

¶18, Ex. A.  For reasons explained below, however, this statement is not actionable because it is

incapable of defamatory meaning and, in any event, is loose, figurate speech that constitutes Mr.

Ball's protected opinion.

### 1.     Alleged Statement No. 3 is Incapable of Defamatory Meaning

Initially, as set forth above, the full context in which Alleged Statement No. 3 appears

signals to the readers that the statement should <u>not</u> be interpreted literally.  Indeed, in the same

paragraph as Alleged Statement No. 3, the DNR Article states that Mr. Ball "<u>lovingly</u>" refers to

Mr. Klinko as "Klinko on the brinko."  Complaint, Ex. A.  The following paragraph of the DNR

Article quotes Mr. Klinko as saying that the First Lawsuit (which was dismissed at the pleading

stage), "will be known as the biggest scandal in American fashion."  <u>Id</u>.  Clearly, against this

background, readers are <u>not</u> being signaled that the reference to a "rap sheet" is a statement of

Doc. # CC-174191 v.2

fact, or, for that matter, that the term "rap sheet" refers to any alleged wrongful or criminal activity.

Assuming *arguendo* that readers of the article would conclude that Mr. Klinko has a "rap sheet," and that this "rap sheet" includes some reference to a "criminal and/or suspect past," it does not follow that the statement is defamatory. For example, interpreting "rap sheet" in the manner advanced by Mr. Klinko, it is not clear whether a "rap sheet" would include civil litigation, a nasty divorce, traffic tickets, or arrests which are later dropped, let alone instances in which Mr. Klinko may have "perpetrated illegal acts and/or broken the law." Complaint ¶ 18. The statement is therefore not susceptible to being proven true or false. Here, the DNR Article (and Mr. Ball) did not mention any criminal activity, did not accuse Mr. Klinko of committing any specific crimes, did not falsely state Mr. Klinko has been arrested or convicted in connection with any specific crimes, and did not state any details regarding what does or does not appear on Mr. Klinko's alleged rap sheet.

Reading Statement No. 3 in the sense urged by Mr. Klinko, i.e., that it implies some sort of criminal past, all that can be said with certainty is that the rap sheet would include *at least one arrest for an unknown act.* This simply is not defamatory. Levin v. McPhee, 119 F.3d 189, 195 (2d Cir. 1997) (explaining that defamatory statements are those that "tend to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number in the community") (internal brackets omitted). Mr. Klinko's claim, as it relates to this statement, therefore should be dismissed, as Statement No. 3 does not rise to the level of a defamatory statement under New York law. Id. (explaining that the Court should decide as a "threshold issue" whether the statement is capable of defamatory meaning).

## 2.    Alleged Statement No. 3 is Loose, Figurative Speech That Constitutes Protected Opinion

Even if the Court decides that the term "rap sheet" is capable of having a defamatory meaning in some instances, the claim still must be dismissed if the statement constitutes protected opinion in the instant case. Gross, 82 N.Y.2d at 155 (explaining that, in New York, "there is no special rule of law that makes criminal slurs actionable regardless of whether they are asserted as opinion or fact"); Huggins v. Moore, 253 A.D.2d 297, 306, 689 N.Y.S.2d 21, 29 (1st Dep't 1999), rev'd on other grounds, 94 N.Y.2d 296 (1999) ("The mere fact that a plaintiff is accused of a crime does not, *per se*, make out a defamation claim."). Here, it is clear that Alleged Statement No. 3 is protected opinion because the term "rap sheet" was used in a loose, figurative sense.

The United States Supreme Court has, on two occasions, explained that statements similar to Alleged Statement No. 3 are not actionable. First, in Greenbelt Coop. Publ'g Ass'n v. Bresler, 398 U.S. 6, 90 S. Ct. 1537 (1970), a newspaper was sued for republishing a comment made at a city council meeting that the plaintiff was "blackmailing" the city in connection with pending negotiations. Greenbelt, 398 U.S. at 7-8. The Supreme Court rejected the plaintiff's libel claim because no one who read the newspaper would believe that the plaintiff actually had committed the crime of blackmail. Id. at 14. The Court concluded that the speaker used the word "blackmail" as "no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the plaintiff's] negotiating position extremely unreasonable." Id.

Second, in Letter Carriers v. Austin, 418 U.S. 264, 94 S. Ct. 2770 (1974), the defendant was accused of referring to the plaintiffs as "scabs" and circulating a definition of the word that explained: "a SCAB is a traitor to his God, his country, his family and his class." Letter Carriers, 418 U.S. at 268. Plaintiffs argued that, based on the definition of a scab, the defendant had

- 12 -

accused plaintiffs of committing the crime of treason. Id. at 283. The Court rejected the claim and explained that defendant's use of the word scab was "in a loose, figurative sense to demonstrate the union's strong disagreement with the views of those workers who oppose unionization." Id. at 284.

The Second Circuit is in accord and has explained the law as follows: "(1) that a pejorative statement of opinion concerning a public figure generally is constitutionally protected . . . no matter how vigorously expressed; (2) that this principle applies even when the statement includes *a term which could refer to criminal conduct* if the term could not reasonably be so understood in context; but (3) that the principle does not cover a charge which could reasonably be understood as *imputing specific criminal or wrongful acts.* Cianci, 639 F.2d at 64 (emphasis added). The Cianci court further noted that charges of *"specific criminal misconduct"* are not protected as opinions. Id. at 66 (emphasis added).

The Eighth Circuit has explained the parity of reasoning between the Second Circuit's decision in Cianci and the Supreme Court's decisions in Greenbelt and Letter Carriers as follows: "While allegations of *specific criminal conduct* generally cannot be protected as opinion, *broad brush-stroked references* to unethical conduct, even using terms normally understood to impute specific criminal acts, may be understood by the reasonable viewer as opinion." Lauderback v. Am. Broad. Cos., 741 F.2d 193, 197 (8th Cir. 1984) (emphasis added).

Here, as in Greenbelt and Letter Carriers, to the extent the term "rap sheet" may be understood to refer to criminal conduct at all, it—like the terms "blackmail" and "scab"—carries only a "broad, brush-stroked" reference to that meaning which, as noted above, constitutes protected opinion. Furthermore, the context in which the statement appears--as part of a trio of statements employing loose, figurative language, sarcasm and hyperbole--confirms that a

reasonable reader would understand that Mr. Ball was being flippant and would not take this statement literally.

In sum, Alleged Statement No. 3 is not actionable because it is not capable of defamatory meaning. Even if the Court disagrees, however, the statement still is protected because the context in which the term "rap sheet" appears makes it clear it is being used in a loose, figurative sense, and not to describe any specific criminal misconduct. Accordingly, the statement is protected by well-established Supreme Court and Second Circuit precedent.

D.     **The Alleged Statements Are Not Defamatory *Per se***

In the unlikely event that the Court finds any of the Alleged Statements to be actionable, Mr. Klinko's claim still must be dismissed because the Alleged Statements are not defamatory *per se*, and he has not alleged (nor can he honestly allege) that he has suffered any special damages.

Mr. Klinko alleges, in a conclusory fashion, that Mr. Ball's statements are defamatory *per se*. Complaint ¶ 29. Mr. Klinko is wrong.

A statement is defamatory *per se* if it:  (1) "charg[es] plaintiff with a serious crime;" (2) "tend[s] to injure another in his or her trade, business or profession;" (3) conveys "that plaintiff has a loathsome disease;" or (4) "imput[es] unchastity to a woman." Liberman v. Gelstein, 80 N.Y.2d 429, 435 (1992). If a statement is "defamatory *per se*," injury is presumed and the plaintiff may recover nominal damages even if no actual damages are proven. Celle, 209 F.3d at 179. If, on the other hand, the statement is not defamatory *per se*, the plaintiff must plead and prove special damages (*i.e.*, economic or pecuniary loss). Galasso v. Saltzman, 42 A.D.3d 310, 311, 839 N.Y.S.2d 731, 732 (1st Dep't 2007).

None of the Alleged Statements charge Mr. Klinko with a *serious* crime (or *any* crime, specific or otherwise, for that matter). In Liberman, the court explained that, "Not every

- 14 -                                    Doc. # CC-174191 v.2

imputation of unlawful behavior . . . is slanderous *per se*. . . . [T]he law distinguishes between serious and relatively minor offenses, and only statements regarding the former are actionable without proof of damage." Liberman, 80 N.Y.2d at 435. Even assuming *arguendo* that some readers might interpret the comment that Mr. Klinko has a "rap sheet" as referring to criminal activity, there is absolutely no basis to conclude that Mr. Klinko has committed a *specific, serious* crime. It follows that the first category of slanderous *per se* statements announced in Liberman is inapplicable.

The third and fourth categories also have no relevance to the instant case. Accordingly, the *only possible* category is the second, but none of the Alleged Statements injure Mr. Klinko in his profession. Examples of defamatory statements in the second category are: calling a physician a butcher, calling an attorney a shyster, accusing a chauffer of habitual drinking, and accusing a public officer of accepting bribes or using his office for corrupt purposes. Celle, 209 F.3d at 180 (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 112, at 791 (5th ed. 1984)). Each of these examples calls into question the plaintiff's ability to competently perform his trade or profession, which can not be said of any of the Alleged Statements.

Mr. Klinko describes himself as "a highly successful, internationally acclaimed, fashion/celebrity photographer who has become well known for his work with A-list actors, musicians and models in the entertainment industry." Complaint ¶ 7. Mr. Ball has not accused Mr. Klinko of being a poor photographer. Nor has Mr. Ball accused Mr. Klinko of doing any act, or of having any characteristic, that would impair his ability to be a photographer. In short, Mr. Ball has not said anything that would have any impact on Mr. Klinko's ability to do his job. It follows that the Alleged Statements are not defamatory *per se*. See Ram v. Moritt, 205 A.D.2d 516, 517, 612 N.Y.S.2d 671, 672 (2d Dep't 1994) (calling a doctor a "liar", a "cheat" and a

Doc. # CC-174191 v.2

"debtor" is not slander *per se* because the statements do not "address the plaintiff's professional status as a doctor").

Because the Alleged Statements are not defamatory *per se*, Mr. Klinko must plead and prove special damages. Galasso, 42 A.D.3d at 311, 839 N.Y.S.2d at 732. Special damages must be pleaded with particularity. Ram, 205 A.D.2d at 517, 612 N.Y.S.2d at 672. Here, Mr. Klinko has not alleged any special damages with particularity. Complaint ¶ 30. It follows that the defamation claim must be dismissed. Ram, 205 A.D.2d at 517, 612 N.Y.S.2d at 672.

**POINT II**

**PLAINTIFF'S SECOND CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS AS A MATTER OF LAW**

Mr. Klinko's second cause of action for intentional infliction of emotional distress is entirely duplicative of the defamation claim. Several courts have instructed, however, that intentional infliction of emotional distress "should not be used to circumvent the established and carefully balanced framework of constitutional and state libel law." Chaiken v. VV Publ'g Corp., 907 F. Supp. 689, 699 (S.D.N.Y. 1995); Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 56 (1988) (explaining that a public figure must satisfy all elements of a defamation claim before recovering for intentional infliction of emotional distress based on the same publication).

Accordingly, Mr. Klinko's claim for intentional infliction of emotional distress must be dismissed on this basis. See, e.g., E.E.O.C. v. Die Fliedermaus, 77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999) (recognizing that New York courts routinely dismiss intentional infliction of emotional distress claims where plaintiffs also have asserted a defamation claim arising from the same conduct); Anyanwu v. Columbia Broad Sys., Inc., 887 F. Supp. 690, 693-94 (S.D.N.Y. 1995) ("When additional tort claims are aimed at controlling the same speech that is the basis of a libel claim, courts should not entertain the additional claims under less stringent standards.")

Doc. # CC-174191 v.2

**POINT III**

## IF THE CASE IS NOT DISMISSED, IT SHOULD BE
## TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA

Transfer of an action under 28 U.S.C. § 1404(a) is discretionary but appropriate where it would be in the "convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). Notions of convenience and fairness should be considered on a case-by-case basis, taking into account the following factors: "(1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006). "There is no rigid way for balancing these factors, and no single one of them is determinative." Citigroup, Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000).

The burden is on the party seeking a transfer to show that: (1) the action is one that might have been brought in the proposed transferee forum, and (2) the transfer promotes efficiency and justice. Cartier v. D & D Jewelry Imports, 510 F. Supp. 2d 344, 345-46 (S.D.N.Y. 2007).

Here, the action could have been filed in the Central District of California because—as alleged in the Complaint—the parties are diverse, the amount in controversy exceeds $75,000, and Mr. Ball is a resident of Los Angeles, California. Complaint ¶¶ 4, 5, 30, 31; Declaration of Michael Ball, submitted herewith ("Ball Decl.") ¶ 2. Accordingly, a federal court in California has subject matter jurisdiction over the claims based on diversity, and Mr. Ball is subject to personal jurisdiction in California. Venue is proper in the Central District of California because Mr. Ball resides in that district. 28 U.S.C. § 1391(a) (2000); Ball Decl. ¶ 2.

Doc. # CC-174191 v.2

The only issue, therefore, is whether a transfer would promote efficiency and justice. Cartier, 510 F. Supp. 2d at 346. The first factor -- plaintiff's choice of forum -- weighs against a transfer because Plaintiff chose to file the action in New York. The second factor (the convenience of the witnesses), however, weighs in favor of a transfer because the two most important witnesses in this action (Mr. Ball and the news reporter who recorded and then republished the Alleged Statements) are located in California. Ball Decl. ¶¶ 2, 4. The third factor -- the location of relevant documents -- is neutral because this case will not involve voluminous documents. The fourth factor -- convenience to the parties -- also is neutral because California is more convenient for Mr. Ball and New York presumably is more convenient for Mr. Klinko. The fifth factor -- the locus of operative facts, however, weighs *strongly* in favor of a transfer. All of the operative facts in this case took place in California—Mr. Ball allegedly made the statements at issue in California; the news reporter is located in California; and the article that republished the Alleged Statements was circulated from California. Ball Decl. ¶¶ 2, 4. On the other hand, none of the operative facts occurred in New York. The remaining two factors are neutral because witnesses can be compelled from either locale, and both Mr. Klinko and Mr. Ball have the means to litigate in either district.

On balance, only the first factor weighs against transferring this action to the Central District of California; however, this factor should receive "considerably less deference" because the minimal connection to the Southern District of New York was generated by Plaintiff himself. Cartier, 510 F. Supp. 2d at 348. Each of the other factors is either neutral or is in favor of a transfer. Accordingly, Mr. Ball respectfully request that the Court exercise its discretion and transfer this action to the Central District of California. Id. (transferring case from New York to

California where only the first factor weighed against the transfer, and every other factor either

was neutral or weighed in favor of the transfer).

## CONCLUSION

For the reasons set forth above and contained in the accompanying Declaration of

Michael Ball, Mr. Ball respectfully requests that the Court dismiss Plaintiff's entire Complaint

under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  In the alternative, Mr. Ball respectfully

requests that the Court transfer this action to the Central District of California, pursuant to 28

U.S.C. § 1404(a).

STEPTOE & JOHNSON LLP

By: _____
    Michael C. Miller
    Evan Glassman
    Lenor C. Marquis
    750 Seventh Avenue
    Suite 1900
    New York, NY 10019
    (212) 506-3900

    *Attorneys for Defendant*
    *Michael Ball*

*Of Counsel:*
Michael R. Heimbold
Dylan Ruga
STEPTOE & JOHNSON LLP
2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067
(310) 734-3200

Doc. # CC-174191 v.2

## CERTIFICATE OF SERVICE

I do hereby certify that on this 26th day of December, 2007, I served a copy of the

foregoing **Defendant Michael Ball's Memorandum of Law in Support of His Motion to**

**Dismiss or, in the Alternative, to Transfer** on counsel for Plaintiff in the above-captioned

matter via electronic mail and Federal Express.

Kimberlyn Brzozowski

Anthony A. LoPresti, Esq.
Meltzer LoPresti, LLP
30 Broad Street, 37th Floor
New York, New York 10004