UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

MARKUS KLINKO,

                     Plaintiff,

-against-

MICHAEL BALL a/k/a MICHAEL F. BALL,

                     Defendant.

------------------------------------------------------------

Case No. 07 CV 11362 (VM) (HP)

**REQUEST FOR JUDICIAL NOTICE**

Pursuant to Federal Rule of Evidence 201, Defendant Michael Ball requests that the Court take judicial notice of the following:

1.      Complaint, *Markus Klinko, et al. v. Rock & Republic Enterprises, Inc., et al.*, Case No. 101063/07 (Jan. 24, 2007), filed in the Supreme Court of New York, County of New York. A true and correct copy of the document is attached hereto as Exhibit A.

2.      Decision, filed July 20, 2007, by the Hon. Leland DeGrasse, Supreme Court of the State of New York, New York County, granting Defendants' motion to strike paragraphs 21 and 24 of the Complaint. A true and correct copy of the document is attached hereto as Exhibit B.

3.    Decision, filed November 9, 2007, by the Hon. Leland DeGrasse, Supreme Court

of the State of New York, New York County, granting Defendants' motion to dismiss the

Complaint without leave to amend.  A true and correct copy of the document is attached hereto

as Exhibit C.

Dated: New York, New York
      December 26, 2007

STEPTOE & JOHNSON LLP

By: _____
Michael C. Miller (MM 4632)
Evan Glassman (EG 9493)
Lenor C. Marquis (LM 4597)
750 Seventh Avenue
Suite 1900
New York, NY 10019
(212) 506-3900

*Attorneys for Defendant*
*Michael Ball*

*Of Counsel:*
Michael R. Heimbold
Dylan Ruga
STEPTOE & JOHNSON LLP
2121 Avenue of the Stars
Suite 2800
Los Angeles, CA 90067
(310) 734-3200

Doc. #11858 v.1

## CERTIFICATE OF SERVICE

I do hereby certify that on this 26th day of December, 2007, I served a copy of the

foregoing **Request for Judicial Notice** on counsel for Plaintiff in the above-captioned matter via

electronic mail and Federal Express.

Kimberlyn Brzozowski

Anthony A. LoPresti, Esq.
Meltzer LoPresti, LLP
30 Broad Street, 37th Floor
New York, New York 10004

Doc. #11858 v.1

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------X

MARKUS KLINKO and MARKUS KLINKO
PHOTOGRAPHY, INC., d/b/a MARKUS KLINKO &
INDRANI PHOTOGRAPHY,

Plaintiff,

-against-

ROCK & REPUBLIC ENTERPRISES, INC., d/b/a
ROCK & REPUBLIC JEANS and
MICHAEL BALL, individually,

Defendants.

-----------------------------------------------------------------X

NEW YORK
COUNTY CLERK'S OFFICE

JAN 24 2007

NOT COMPARED
WITH COPY FILED

Index No.
Date Filed: 101063/07

SUMMONS and
VERIFIED COMPLAINT

**YOU ARE HEREBY SUMMONED** to appear in the Supreme Court of the State of

New York, County of New York, at the office of said Court at 60 Centre Street, and answer the

Complaint in this action and to serve a copy of your Answer or, if the Complaint is not served

with this Summons, to serve a Notice of Appearance on Plaintiff's attorney within 20 days after

the service of this Summons, exclusive of the day of service (or within 30 days after the service

is complete if this Summons is not personally delivered to you within the State of New York). In

case of your failure to answer or appear, judgment will be taken against you by default for the

relief demanded in the accompanying Complaint.

The basis of the venue designated is Plaintiffs' residence and place of business and the

county in which the cause of action accrued.

Dated: New York, New York
January 24, 2007

MELTZER LoPRESTI, LLP

By:

Anthony A. LoPresti, Esq.

30 Broad Street, 37th Floor
New York, New York 10004
ph.: (212) 425-0551

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
MARKUS KLINKO and MARKUS KLINKO
PHOTOGRAPHY, INC., d/b/a MARKUS KLINKO &
INDRANI PHOTOGRAPHY,

        Plaintiff,

  -against-

ROCK & REPUBLIC ENTERPRISES, INC., d/b/a
ROCK & REPUBLIC JEANS and
MICHAEL BALL, individually,

        Defendants.
-----------------------------------------------------------------X

Index No.

Date Filed:

**VERIFIED COMPLAINT**

Plaintiffs **MARKUS KLINKO** and **MARKUS KLINKO PHOTOGRAPHY, INC.,** **d/b/a MARKUS KLINKO & INDRANI PHOTOGRAPHY,** by and through their attorneys, **MELTZER LoPRESTI, LLP,** as and for their complaint against Defendants **ROCK & REPUBLIC ENTERPRISES, INC., d/b/a ROCK & REPUBLIC JEANS** and **MICHAEL BALL,** allege as follows:

### NATURE OF ACTION

1.  This action responds to a pattern of threats and extortion perpetrated by defendant Michael Ball ("Ball"), the CEO, founder and head designer for defendant Rock & Republic Enterprises, Inc. ("Rock & Republic"), a manufacturer of fashionable denim jeans under the brand name "Rock & Republic".

2.  Fueled by jealousies over an ex-fiancé that abandoned Ball and who subsequently entered into a long term romantic relationship with plaintiff Markus Klinko ("Klinko"), and seeking to protect himself from potentially damaging information regarding his past, Ball

1

embarked on a crusade to intimidate Klinko personally and professionally. Upon obtaining possession of intimate e-mails and sexually explicit photos exchanged by Klinko and Ball's ex-fiancé, Ball proceeded to threaten Klinko to "walk away" from his ex-lover and any monies owed to plaintiffs, because if he didn't, Ball would use his "power and influence" in the fashion industry, as well as the photos and e-mails, to publicly embarrass and ruin Klinko personally and professionally. Ball's threat: "you don't want to fuck with me".

3.    In December 2006, Klinko, together with his business partner Indrani Pal-Chaudhuri ("Indrani") and their studio, Markus Klinko & Indrani Photography ("MKIP"), had originally been hired by defendant Rock & Republic to shoot an international advertising campaign for their brand.

4.    Klinko, a highly successful, internationally acclaimed, fashion/celebrity photographer who has become well known for his work with A-list actors, musicians and models in the entertainment industry such as Jennifer Lopez, Britney Spears, Mariah Carey, Janet Jackson, Beyonce, Lindsay Lohan and David Bowie, among many others, as well as for his work in major advertising campaigns and fashion magazines, was introduced to Ball by Ball's ex-fiancé while she was in a romantic relationship with Klinko. However, upon information and belief, Ball was unaware of this relationship.

5.    Thereafter, despite being admittedly extremely pleased by Klinko and MKIP's work and the obvious success of the photo shoot, instead, Ball later sought to humiliate and embarrass Klinko and MKIP by making unreasonable and nonsensical demands. Ball followed by then refusing to use any of plaintiffs' images, by refusing to use Klinko and MKIP in any further ad campaigns (as defendants had promised), and by refusing to compensate plaintiffs

2

without any viable reason.

6.    One week later, upon coming into possession of the aforesaid sexually explicit images and personal e-mails, Ball then proceeded to threaten Klinko, claiming to be a "big shot" in the industry ("do you know who I am"), and that Klinko would be embarrassed, humiliated and professionally ruined by this personal information and the release of the photos if he didn't simply "walk away" from any of his claims against defendants or his former lover, repeatedly intimidating Klinko with such statements as "don't fuck with me or you'll regret it", "you don't want to fuck with me" and "let it go, or else".

7.    At that time, Ball's threats also included him assisting in the filing of a harassment claim against Klinko with local police and spending whatever money it took for his attorneys to pursue Klinko through representation of his ex-fiancé.

8.    As alleged herein, in conjunction with the making of such threats, Ball feigned the act of "protecting" his former lover as if a "knight in shining armor", while portraying Klinko as a disgruntled boyfriend.  However, numerous e-mails and communications between both Klinko and Ball's ex-fiancé subsequent to their separation and prior to Ball's threats, belie such a characterization.  Rather, these communications support plaintiffs' claims of Ball's jealous and vindictive motivation, as they detail numerous times a loving desire by Ball's ex-fiancé to continue to remain in a relationship with Klinko, or in the least to remain in communication with him.  In an e-mail to Klinko dated December 28, 2006, she elaborated:  "Listen [ ]now that you met Michael you can understand why I got so traumatized."

9.    Defendant Ball has continued to act in bad faith through such threats, and has benefited by improperly retaining the fruits of plaintiffs' labor, by preventing plaintiffs from

recovering what is rightfully theirs, by use of threats intended to destroy Klinko's personal life and professional career and to embarrass and severely injure plaintiffs' reputation and financial interests. Threats of ruining someone's career through extortion and blackmail should not be tolerated - and resorting to bully tactics in avoidance of proper resolution through the judicial system is simply unacceptable.

### THE PARTIES

10.    Plaintiff Markus Klinko ("Klinko"), is an individual and resident of New York County. Klinko is an internationally known, high-end fashion/celebrity photographer, catering to numerous well-known actors, musicians and models in the entertainment industry, as well as international advertising campaigns and magazines.

11.    Plaintiff Markus Klinko Photography, Inc., d/b/a Markus Klinko & Indrani Photography ("MKIP"), is a corporation duly organized under the laws of the State of New York, and maintains a principal place of business in the City, County and State of New York. MKIP is in the business of photographic and imaging services.

12.    Upon information and belief, defendant Rock & Republic Enterprises, Inc., d/b/a Rock & Republic Jean ("Rock & Republic"), is a corporation organized under the laws of the State of California, with a principal office located at 3525 Eastham Drive, Culver City, California 90232. Rock & Republic is a manufacturer of, among other things, denim jeans, which are sold in New York.

13.    Upon information and belief, Michael Ball ("Ball"), is a resident of the State of California and is the CEO and founder of defendant Rock & Republic.

### VENUE

4

14.     In accordance with Rule 503(a) of the New York Civil Practice Law and Rules, venue is appropriate in this Court.

## STATEMENT OF FACTS

15.     Plaintiffs maintain a well-known business in photography and photographic imaging, catering to a high-end fashion/celebrity clientele of actors, musicians and models in the entertainment industry, also creating images seen in international advertising campaigns and magazines.

16.     Defendants Ball and Rock & Republic represent the brand "Rock & Republic", a clothing line that primarily features fashionable denim jeans.

17.     On or about November 22, 2006, defendants sought a high-end photographer to shoot their major advertising campaign for Spring 2007, to be revealed at Fashion Week in New York, February 2007.

18.     At that time, defendant Klinko was romantically involved with Fernanda Romero ("Romero"), a soap opera actress and aspiring model. Romero introduced Klinko to Ball, in an apparent attempt to garner a position as featured model in the Rock & Republic campaign.

19.     Several years earlier, defendant Ball had been romantically involved with Romero, and had even proposed to her. The couple subsequently became engaged.

20.     Upon information and belief, after a tumultuous relationship in which Ball had several violent incidences with Romero, Romero left Ball and ended the relationship.

21.     Upon information and belief, at various times during 2005, Ball assisted and/or aided Romero in procuring a fraudulent marriage for immigration purposes, and also assisted and advised Romero in obtaining a false social security identification card while utilizing two

different social security numbers.

22.    In about January, 2006, Romero became romantically involved with plaintiff Klinko. Upon information and belief, this occurred despite Ball's attempts to woo Romero back by buying her a new car during that same time.

23.    During Romero and Klinko's relationship, Romero would often reveal to Klinko highly confidential and intimate details about her relationship with Ball, and at times she would even broadcast phone conversations with Ball via speakerphone or by placing the phone at full volume.

24.    On numerous occasions, Romero referred to sensitive matters regarding their prior relationship, such as instances of violence by Ball leading to police involvement and Romero's complaints to the police, immigration fraud and his complicity in her fraudulent marriage and the procurement of false social security numbers, tapes of their therapy sessions and conversations regarding his sexuality.

25.    Upon information and belief, Klinko's acquired knowledge of such accounts was the partial motivation for Ball to eventually seek to silence and extort Klinko.

26.    In about November 2006, Romero introduced Klinko to Ball in an apparent effort to be featured in the Rock & Republic advertising campaign.

27.    Upon information and belief, until that time, Romero had never told Ball that she was involved with Klinko for fear of not being awarded a model contract with Rock & Republic.

28.    Upon meeting, Ball represented that since defendants had partnered with and/or been involved in major campaigns with celebrity personalities such as Victoria Beckham ("Posh Spice") and plans to feature Jessica Alba in an upcoming fashion season, plaintiffs would

benefit from the added exposure of a full advertising campaign with the Rock & Republic brand.[1]

29.     As defendants were aware, Klinko and MKIP demand a superior "day rate" in the industry due to their status and impressive client roster. Plaintiffs' images are known worldwide, as they have produced many instantly recognizable photographs for A-list celebrities, musicians and models in the entertainment industry, such as Jennifer Lopez, Britney Spears, Mariah Carey, Beyonce, Lindsay Lohan, Mary J. Blige, Kate Winslet, Keanu Reeves, David Bowie, among others, as well as major advertising campaigns for highly visible clients such as L'Oreal Paris, Pepsi, Hugo Boss, Nike, Elizabeth Arden, Baby Phat, and many others. Such images have also appeared in well-known magazines such as Vanity Fair, V, GQ, Interview, Arena and Playboy, among others. (See http://www.markusklinko-indrani.com/photoGallery/ )

30.     On or about December 5, 2006, the parties agreed that plaintiffs would be retained by defendants in relation to the advertising campaign for defendants' brand "Rock & Republic" (hereinafter, "the Work"), on the following terms: (i) plaintiffs would be guaranteed "on page ad credit" for their work; and (ii) plaintiffs were to be granted exclusive rights to shoot future campaigns for the brand. In return, plaintiffs agreed to: (a) waive their session fee (which consisted of a day rate of $ 30,000.00); (b) grant international usage of images produced for one year (valued at $ 30,000.00); and (c) provide digital post production services at cost. Attached as Exhibit "A" is the parties' agreement. As is standard, up front expenses of the photo shoot were to be paid prior to the shoot.

31.     At this time, by the explicit instruction of Ball, Romero was not to be used in the

---

[1]     Unknown to Klinko, defendants and Victoria Beckham had parted ways, and upon

photo shoot because "she cheated on me", as Ball stated before both his and plaintiffs' staff.

32.    Pursuant to said agreement, on about December 14, 2007, plaintiffs duly performed the required services in connection with the Work.

33.    The photo shoot was a great success, and defendant Ball openly praised the plaintiffs' work, which he also declared on camera in a video produced for the campaign. As stated by Ball:

> "I just wanted to say working with Markus and Indrani was amazing . . . they're the future of fashion, I mean I'm really stoked as a young company to be working with them and I think this is the beginning of greatness . . . honestly. It was quite a shoot, and . . . you guys will see it, it'll be on the pages, of March . . .
>
> I'd be honest I look forward to work with them again and again. I mean honestly . . . this is a relationship and a partnership that is going to create some really amazing, amazing things, and I look forward to it. It's going to be really fucking cool . . .".

34.    By about December 21, 2007, plaintiffs had already prepared seven (7) composed ad proposals for presentation to defendants.

35.    On that date, following plaintiffs' submission of images for consideration, defendant Ball suddenly contacted plaintiffs and for no reason, demanded that plaintiffs immediately turn over **all images taken - even test images**.    Such a demand under these circumstances is unheard of and is not standard in the industry.

36.    Despite Ball's unreasonable demand, plaintiffs additionally provided several dozen images to defendants on December 22 and December 29, 2006.

37.    At this time, plaintiffs further explained that the edited selection of images was ready for review, however, defendant Ball simply refused to communicate at all with plaintiffs

---

information and belief, has recently sued defendants.

8

about the proposed image selection.

38.    Thereafter, defendants notified plaintiffs' agent that they were not only refusing to use any of plaintiffs' images, but were refusing to use Klinko and MKIP in any further ad campaigns (as promised).

39.    Defendants also notified plaintiffs' agent and Klinko directly that they were refusing to compensate plaintiffs at all, without any viable reason.

40.    Upon information and belief, on or about January 15, 2007, defendant Ball came into possession and/or viewed highly personal, sexually explicit photos and e-mails, shared between Klinko and Romero.

41.    On January 18, 2007, defendant Ball contacted Klinko's attorney by telephone, stating he had viewed the sexually explicit photographs and e-mails.

42.    In that conversation, Ball threatened that if Klinko contacted or pursued Romero any further, Klinko's reputation would be damaged by the exposure of such information.

43.    On about January 21, 2007, Klinko contacted Ball by telephone, whereupon Ball proceeded to threaten Klinko that if he did not "back off" and simply "walk away" from any claims he had against defendants or Romero, Ball would expend all of his power and influence to embarrass, humiliate and professionally ruin Klinko by exposure of this personal information.

44.    On that phone conversation, defendant Ball repeatedly threatened and intimidated Klinko with statements such as "don't fuck with me or you'll regret it", "let it go, or else", "you don't want to fuck with me" and "don't fuck with me on a personal level".

45.    Ball's threats also included that he would assist Romero in filing a bogus harassment claim with local police and spend "any amount of money" on attorneys for Romero

9

to pursue Klinko, in addition to causing crippling financial loss to plaintiffs.

46.     On that phone conversation, Ball threatened and intimated that if Klinko did not "back off" and "walk away", he would use all of his influence and connections in the industry to prevent Klinko and MKIP from earning money with other clients, and would openly and publicly refuse to use plaintiffs' work, thus causing further embarrassment and humiliation.

47.     On that phone conversation, Ball also threatened to force Klinko to expend great sums of money via legal battles and attorneys' fees, that would essentially put Klinko out of business.

48.     In conjunction with making such threats, Ball feigned the act of "protecting" Romero. However, upon information and belief, Ball is simply protecting his own interests and using the opportunity of Romero's romantic relationship with Klinko, and the sexually explicit photos and personal e-mails, to avoid his own liability and to strike out maliciously against Klinko.

49.     Upon communicating with defendant Ball on January 21, 2007, and in fear and apprehension over the aforesaid threats received from Ball, Klinko decided to forgo pursing Ball, Rock & Republic and/or Romero for monies owed and services performed.

**AS AND FOR A  FIRST CAUSE OF ACTION**
**AGAINST MICHAEL BALL**
**(Extortion)**

50.     Plaintiffs incorporate paragraphs "1" through "49", above by reference.

51.    That defendant Ball did threaten and intimidate plaintiff Klinko that if he did not relinquish his rights to property, namely money plaintiffs are entitled to, and if Klinko did not cease all communications with Romero, he would expose personal documents and photographs and publicize the same, subjecting Klinko to contempt, ridicule or embarrassment.

52.    That defendant Ball did threaten and intimidate plaintiff Klinko that if he did not relinquish his rights to property, namely money plaintiffs are entitled to, and if Klinko did not cease all communications with Romero, he would assist in accusing Klinko of a crime and/or cause criminal charges to be instituted against him.

53.    That defendant Ball did threaten and intimidate plaintiff Klinko that if he did not relinquish his rights to property, namely money plaintiffs are entitled to, and if Klinko did not cease all communications with Romero, he would use his influence in the fashion industry and spend any amount of money to defame, bad mouth and harm Klinko personally and professionally, in the fashion and entertainment industry.

54.    That such wrongful actions would cause serious injury to plaintiffs' reputations and business interests.

55.    That by reason of defendant Ball's threats, defendants improperly obtained property, namely, services, money and images to which they are not entitled.

56.    By reason of defendant Ball's attempted extortion, plaintiffs are entitled to declaratory and injunctive relief as well as compensatory and punitive damages in an amount to be determined at trial.

### AS AND FOR A SECOND CAUSE OF ACTION
### AGAINST MICHAEL BALL

11

**(Tortious Interference with Prospective Business Relations)**

57.     Plaintiffs incorporate paragraphs "1" through "56", above by reference.

58.     Plaintiffs' public image and relations with clients and advertisers, agents, models, make-up artists, hair stylists, and those employed in the entertainment industry are crucial to their business.

59.     Defendant Ball's wrongful actions, as described in the foregoing paragraphs, and which include the willful breach of the Rock & Republic advertising campaign contract without reason, exhibit an intentional, malicious and unjustified interference with plaintiffs' current and future business relations with said clients and advertisers, and those employed in the entertainment industry.

60.     Defendant Ball's actions, as described in the foregoing paragraphs, were improper and beyond the scope of his position as CEO of defendant Rock & Republic, such that these actions served to interfere with plaintiffs' current and future business relations with Rock & Republic.

61.     Defendant Ball's interference with plaintiffs' business relations was undertaken with the sole purpose of harassing plaintiffs and/or with dishonest, unfair or improper means.

62.     By reason of the foregoing, and as a direct and proximate result of defendant Ball's conduct, plaintiffs are entitled to declaratory and injunctive relief as well as compensatory and punitive damages in an amount to be determined at trial.

### AS AND FOR A THIRD CAUSE OF ACTION
### AGAINST MICHAEL BALL
**(Prima Facie Tort)**

63.     Plaintiffs incorporate paragraphs "1" through "62", above by reference.

12

64. Defendant Ball's wrongful conduct was completely unjustified and was intended solely to inflict substantial harm against plaintiffs.

65. By reason of the foregoing, plaintiffs are entitled to declaratory and injunctive relief as well as compensatory and punitive damages in an amount to be determined at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION
### AGAINST MICHAEL BALL
**(Intentional Infliction of Emotional Distress)**

66. Plaintiffs incorporate paragraphs "1" through "65", above by reference.

67. Defendant Ball's wrongful conduct, as described in the foregoing paragraphs, constitutes extreme and outrageous conduct and behavior.

68. Defendant Ball acted with malice, and with the intent to cause severe emotional distress to plaintiff Klinko and/or in deliberate disregard of the high probability that severe emotional distress to Klinko would result.

69. Defendant Ball has maliciously embarked on a course of conduct intended to cause Klinko to suffer mental and emotional distress, tension and anxiety.

70. Plaintiff Klinko has suffered and will continue to suffer great mental strain and anguish and severe emotional distress.

71. By reason of the foregoing and as a direct and proximate result of defendant Ball's conduct, plaintiff Klinko is entitled to compensatory and punitive damages against defendant Ball in an amount to be determined at trial.

### AS AND FOR A FIFTH CAUSE OF ACTION
### AGAINST DEFENDANT ROCK & REPUBLIC
**(Breach of Contract)**

72. Plaintiffs incorporate paragraphs "1" through "71", above by reference.

13

73.    To date, despite due demand, defendant Rock & Republic has refused to pay plaintiffs for their services.

74.    That defendant has willfully breached its agreement with plaintiffs by failing to pay plaintiffs for their services duly rendered.

75.    That defendant has willfully breached its agreement with plaintiffs by refusing to use plaintiffs' images and provide plaintiffs with credit acknowledgment of the same.

76.    That defendant has willfully breached its agreement with plaintiffs by failing to provide plaintiffs exclusivity for their services as "partners" with regard to future advertising campaigns.

77.    That as a result of defendant's breach of the parties' agreement, plaintiffs have been damaged in a sum to be determined at trial, but believed to be no less than Five Hundred Thousand Dollars ($ 500,000.00).

## AS AND FOR A SIXTH CAUSE OF ACTION
## AGAINST DEFENDANT ROCK & REPUBLIC
### (Unjust Enrichment)

78.    Plaintiffs incorporate paragraphs "1" through "77", above by reference.

79.    Under the doctrine of *quantum meruit*, defendant Rock & Republic has been unjustly enriched by receiving the benefit of the services provided by the plaintiffs in a sum to be determined at trial, but believed to be an amount no less than Two Hundred Thousand Dollars ($ 200,000.00).

**WHEREFORE**, Plaintiffs demand judgment against the Defendants as follows:

a.    Declaring that the acts and practices complained of herein are in violation of the laws of the State of New York;

14

b.    Enjoining and permanently restraining these violations;

c.    Directing Defendants to pay compensatory and punitive damages to Plaintiffs in

an amount to be proven at trial;

d.    Awarding Plaintiffs costs, disbursements and reasonable attorneys' fees; and

e.    Such other and further relief as the Court may deem just and proper.

Dated:    New York, New York
          January 23, 2007

                        Respectfully submitted,


                        MELTZER  LoPRESTI, LLP


            By:        _____/s/_____
                        Anthony A. LoPresti

                        30 Broad Street, 37th Floor
                        New York, New York 10004
                        (212) 425-0551
                        *Attorneys for Plaintiffs*


15

## VERIFICATION

STATE OF NEW YORK )
                        )SS.:

COUNTY OF NEW YORK )

MARKUS KLINKO, being duly sworn, deposes and says:

I am a principal of plaintiff MARKUS KLINKO PHOTOGRAPHY, INC., d/b/a MARKUS KLINKO & INDRANI PHOTOGRAPHY and an individual plaintiff herein; I have read the foregoing Complaint and know the contents thereof; that the same is true to my knowledge, except to matters therein stated to be alleged upon information and belief, and that, as to those matters, I believe them to be true.

The grounds of my belief as to all matters not stated upon my knowledge are as follows: investigation and information received by me in the course of my dealings with the defendants.

                                       _____
                                           MARKUS KLINKO

Sworn to before me this
23 day of January, 2007

Anthony A. LoPresti
Notary Public, State of New York
No. 02LO6067869
Qualified in New York County
Commission Expires December 17, 2009 10
1/24

1

Exhibit "A"

Exhibit "A"

# OPUS

6442 Santa Monica Blvd #200B Los Angeles, California 90038
Tel 323 871 8300 Fax 323 871 8311
www.opusreps.com

| Date | 12/5/2006 | ESTIMATE | No. | E00149 |
|---|---|---|---|---|

**Bill To**
Rock & Republic
3523 Eastham Drive
Culver City, CA 90232
Attn: Mr Mitch Sebolsky
Phone 310-839-3330 X 250

**Project**
Rock & Republic
Spring 07 Rock & Republic Campaign
w/ Photographer Markus Klinko & Indrani
Shoot: Approx 12/14/2006 (1) Main Image
Usage:1 Yr Int'l Unlimit w/ On Page Photo Credit

RE : Spring 07 Rock & Republic with Photographers Markus Klinko & Indrani **Confidential / Discounted**

| Quantity | Description | Unit Price | Tax | Net Amount |
|---|---|---|---|---|
| 1 | Session Fee ($30,000) & Int'l Usage ($30,000) | $60,000.00 | | $60,000.00 |
| 1 | (1) Photo Assist @ $400/(2)assists @ $250/10 hrs | $900.00 | | $900.00 |
| 1 | Digital Capture Package $2750 + Tech $500 | $3,250.00 | | $3,250.00 |
| 1 | Lighting Equipment Rental | $3,500.00 | | $3,500.00 |
| 1 | Studio Rental & Props (or) Location Rental | $7,000.00 | | $7,000.00 |
| | **the above is a one or the other scenario TBD** | | | $0.00 |
| 1 | (1) Hair Stylist @ $5000 + 20% (based on 10) | $6,000.00 | | $6,000.00 |
| 1 | (1) Make-up Artist @ $6000 + 20% (based on 10) | $6,000.00 | | $6,000.00 |
| 2 | (2) Days Stylist @ $1500 + 20% | $1,800.00 | | $3,600.00 |
| 2 | (2) Days Styling Assistant @ $350/day | $350.00 | | $700.00 |
| 1 | **client will provide seamstress** | | | $0.00 |
| 1 | Model (direct booking through client) | direct book | | $0.00 |
| 1 | Production Insurance | $350.00 | | $350.00 |
| 1 | Production Coordination | $1,000.00 | | $1,000.00 |
| 1 | Production Food / Catering | $1,000.00 | | $1,000.00 |
| 1 | Miscellaneous Expenses | $750.00 | | $750.00 |
| 1 | Digital Post Production / FX | $10,000.00 | | $10,000.00 |
| | **Confidential - Discount** | | | $0.00 |
| | Markus Klinko & Indrani have waived Session | | | $0.00 |
| | Fee & (1) yr Int'l Usage for ON PAGE AD CREDIT | | | $0.00 |
| -1 | Session Fee ($30,000) & Int'l Usage ($30,000) | $60,000.00 | | -$60,000.00 |
| -1 | Digital Post & Production offered @ cost (1) Imag | $6,500.00 | | -$6,500.00 |
| | **All production expenses are required in advance of shooting date** | | | |

**Memo**

If in agreement. please sign and
date and fax back to 323-871-8311

Print:

Sign:

Date:

| | Sub-Total | Sales Tax | Advance | Total Due |
|---|---|---|---|---|
| | $37,550.00 | | | $37,550.00 |

Please make checks payable to "Opus Photo" Federal Tax ID #02 0740929
Wire transfers can be made care of the Bank of America, Los Angeles CA
ABA No : 121 000 358 / Acct No : 034 32 41592 Terms are strictly net 30 days.
Any balance over 30 days is subject to a finance charge of 2.5% per month.
Payee may be responsible for any third party and/or attorney fees incurred in the
collection of this invoice. Client's usage rights transferred upon full payment of
this invoice. Opus is acting exclusively as an agent in this transaction and has in
no way produced any tangible personal property on its own behalf.

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

## HON. LELAND DEGRASSE

PRESENT: _____   PART 25

_____
                    *Justice*

K link D, Markus                    INDEX NO.  101063/07

                                    MOTION DATE  4/2/07

- v -                               MOTION SEQ. NO.  001

Rock + Republic Enterprises         MOTION CAL. NO.  10

_____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

## Cross-Motion:  ☐ Yes  ☒ No

Upon the foregoing papers, it is ordered that this motion

MOTION IS DECIDED IN ACCORDANCE WITH
ACCOMPANYING MEMORANDUM DECISION.

FILED

JUL 20 2007

NEW YORK
COUNTY CLERK'S OFFICE

JUL 1 2007

Dated: _____   _____
                                                    *J.S.C.*

Check one:  ☐ FINAL DISPOSITION   ☒ NON-FINAL DISPOSITION

Check if appropriate:  ☐ DO NOT POST   ☐ REFERENCE

*MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):*

SUPREME COURT     :  STATE OF NEW YORK
COUNTY OF NEW YORK  :  I.A.S.  PART 25

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MARKUS KLINKO and MARKUS KLINKO     :
PHOTOGRAPHY, INC., d/b/a MARKUS
KLINKO & INDRANI PHOTOGRAPHY,     :

                      Plaintiffs,     :

  -against-     :

ROCK & REPUBLIC ENTERPRISES, INC.     :
d/b/a ROCK & REPUBLIC JEANS and
MICHAEL BALL, individually,     :

                    Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

DeGRASSE, J.:

Index No.: 101063/07

Cal. No.: 10 of 4/2/07

FILED
JUL 2 0 2007
NEW YORK
COUNTY CLERK'S OFFICE

       Defendants move for an order pursuant to CPLR 3024 (b) striking paragraphs 21 and 24 of the complaint as scandalous and prejudicial matters that are unnecessarily inserted in plaintiffs' pleading.

       Plaintiff Markus Klinko is a photographer and the co-owner of plaintiff Markus Klinko Photography, Inc., d/b/a Markus Klinko & Indrani Photography. Defendant Michael Ball is the CEO and founder of defendant Rock & Republic Enterprises, Inc., d/b/a Rock & Republic Jeans, a clothing manufacturer. Plaintiffs commenced this action by the filing of a summons and verified complaint on January 24, 2007, seeking declaratory and injunctive relief, as well as money damages. The verified complaint asserts the following six causes of action: (1) extortion, (2) tortious interference with prospective business relations, (3) prima facie tort, (4) intentional infliction of emotional distress, (5) breach of contract, and (6) unjust enrichment.

With respect to plaintiffs' tort claims, the complaint's Statement of Facts alleges that "[f]ueled by jealousies over an ex-fiancé [actress/model Fernanda Romero] that abandoned Ball and who subsequently entered into a long term romantic relationship with [Klinko] ... Ball embarked on a crusade to intimidate Klinko personally and professionally."

Plaintiffs' first cause of action, for extortion, alleges that Ball threatened that "if Klinko did not relinquish his rights to property, namely money plaintiffs are entitled to, and if Klinko did not cease all communications with Romero," Ball would (1) publicize personal documents and photographs which would subject Klinko to "contempt, ridicule or embarrassment," (2) "assist in accusing Klinko of a crime and/or cause criminal charges to be instituted against him," and (3) "use his influence in the fashion industry ... to defame, bad mouth and harm Klinko."

Plaintiffs' second cause of action, for tortious interference with prospective business relations, alleges that Ball's wrongful actions "exhibit an intentional, malicious and unjustified interference with plaintiffs' current and future business relations with [defendants] and advertisers, and those employed in the entertainment industry."

Plaintiffs' third cause of action, for prima facie tort, alleges that "Ball's wrongful conduct was completely unjustified and was intended solely to inflict substantial harm against plaintiffs."

Plaintiffs' fourth cause of action, for intentional infliction of emotional distress, alleges that "Ball acted with malice, and with the intent to cause severe emotional distress to ... Klinko."

With respect to plaintiffs' breach of contract claims, the complaint's Statement of Facts alleges that on December 5, 2006, the parties entered into a contract whereby plaintiffs were hired by defendants to do a photo shoot of defendants' clothing line for a major advertising campaign to be revealed in the New York Fashion Week Runway Shows in February 2007. The parties agreed

-2-

that: "(i) plaintiffs would be guaranteed 'on page ad credit' for their work; and (ii) plaintiffs were to be granted exclusive rights to shoot future campaigns for the brand. In return, plaintiffs agreed to: (a) waive their session fee (which consisted of a day rate of $30,000.00); (b) grant international usage of images produced for one year (valued at $30,000.00); and (c) provide digital post production services at cost." It is further alleged that despite being pleased with the success of the photo shoot, Ball refused to (1) compensate plaintiffs' for their work, (2) use any of plaintiffs' images, and (3) use plaintiffs in any further advertisement campaigns.

Plaintiffs' fifth cause of action, for breach of contract, alleges that Ball breached its agreement with plaintiffs by (1) "failing to pay plaintiffs for their services duly rendered," (2) "refusing to use plaintiffs' images and provide plaintiffs with credit acknowledgment of the same," and (3) "failing to provide plaintiffs exclusivity for their services as 'partners' with regard to future advertising campaigns."

Plaintiffs' sixth cause of action, for unjust enrichment, alleges that defendants "[have] been unjustly enriched by receiving the benefit of the services provided by the plaintiffs."

Defendants now move pursuant to CPLR 3024 (b) to strike the allegations contained in paragraphs 21 and 24 of the complaint's Statement of Facts on the grounds that said paragraphs contain scandalous and prejudicial matters that are unnecessary to establish any of plaintiffs' causes of action. Specifically, defendants argue that the allegations concerning Ball's alleged participation in immigration fraud have no conceivable bearing on plaintiffs' tort and contract claims. Defendants further argue that "[t]hese allegations, if not stricken, are likely to cause Ball continuing reputational and economic damage." In opposition to the motion, plaintiffs maintain that paragraphs 21 and 24 are material and necessary to establish Ball's intent and motivation because "central to this action

*is* the intimate relationship between these three individuals [Ball, Klinko and Romero], their

knowledge of each others' personal affairs and what motivations caused the resulting harm."

The scandalous matter objected to consists of the following allegations:

> "21. ... at various times during 2005, Ball assisted and/or aided
> Romero in procuring a fraudulent marriage for immigration purposes,
> and also assisted and advised Romero in obtaining a false social
> security identification card while utilizing two different social
> security numbers."

> "24. On numerous occasions, Romero referred to sensitive matters
> regarding their prior relationship, such as instances of violence by
> Ball leading to police involvement, and Romero's complaints to the
> police, immigration fraud and his complicity in her fraudulent
> marriage and the procurement of false social security numbers, tapes
> of their therapy sessions and conversations regarding his sexuality."

CPLR 3024 (b) permits the court to "strike any scandalous or prejudicial matter unnecessarily

inserted in a pleading." The test for determining if portions of a pleading should be stricken pursuant

to CPLR 3024 (b) is "[w]hether the allegation is relevant, in an evidentiary sense, to the controversy

and, therefore, admissible at trial" (*Wegman v Dairylea Coop., Inc.*, 50 AD2d 108, 111 [1975],

*appeal dismissed*, 38 NY2d 918 [1976]). Additionally, in order to strike portions of a pleading, the

allegations must be scandalous or prejudicial and not merely unnecessary or irrelevant (*Card v

Budini*, 29 AD2d 35 [1967]; *Matter of Emberger*, 24 AD2d 864 [1965]). Material is scandalous if

it is both immaterial and reproachful or capable of producing harm without justification (*Hurley v

Hurley*, 266 AD 701 [1943]; *Matter of Stevens*, 101 Misc2d 1013 [1979]). Material is prejudicial

when it impairs a substantial right of a party or causes harm to the party and is not necessary to the

challenged pleading (*JC Mfg., Inc. v NPI Elec., Inc.*, 178 AD2d 505, 506 [1991]; *Schachter v

Massachusetts Protective Assoc.*, 30 AD2d 540 [1968]).

Upon review of paragraphs 21 and 24, the court finds that the allegations asserted therein are not relevant to plaintiff's claims as they relate to events outside the scope of this lawsuit and are potentially prejudicial to defendants (*see Halford v First Jersey Sec., Inc.*, 182 AD2d 1003, 1005 [1992]; *Talbot v Johnson Newspaper Corp.*, 124 AD2d 284, 285 [1986]; *Shenandoah v Hill*, 124 AD2d ). These paragraphs should therefore be stricken from the complaint pursuant to CPLR 3024 (b).

Accordingly, the motion is granted and paragraphs 21 and 24 shall be stricken from the complaint.

This constitutes the decision and order of the Court.

DATED:    ,""L 1 1 2007

_____

J.S.C.

**HON. LELAND DeGRASSE**

FILED

JUL 2 0 2007

NEW YORK
COUNTY CLERK'S OFFICE

-5-

# EXHIBIT C

SCANNED ON 11/14/2007

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

HON. LELAND DEGRASSE

Index Number : 101063/2007                                    PART ⏤25

KLINKO, MARKUS

vs

ROCK & REPUBLIC ENTERPRISES

Sequence Number : 003

DISMISS

|  | INDEX NO. | _____ |
|---|---|---|
|  | MOTION DATE | _____ |
|  | MOTION SEQ. NO. | _____ |
|  | MOTION CAL. NO. | _____ |

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:** ☐ Yes ☒ No

Upon the foregoing papers, it is ordered that this motion

MOTION IS DECIDED IN ACCORDANCE WITH
ACCOMPANYING MEMORANDUM DECISION.

NOV 0 9 2007

*(vertical text at left margin)* MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: _____

_____
J.S.C.

Check one:  ☒ FINAL DISPOSITION  ☐ NON-FINAL DISPOSITION

Check if appropriate:  ☐ DO NOT POST

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
MARKUS KLINKO and MARKUS KLINKO
PHOTOGRAPHY, INC. d/b/a MARKUS KLINKO
& INDRANI PHOTOGRAPHY,

                      Plaintiffs,

            -against-                      Index No. 101063/07


ROCK & REPUBLIC ENTERPRISES, INC., d/b/a
ROCK & REPUBLIC JEANS and MICHAEL BALL,
individually,

                      Defendants.
-----------------------------------------------------------------X

**DeGrasse, J.:**

    Defendants move for an order dismissing the complaint pursuant to CPLR 3211 (a)(1) and

(7). Under the first cause of action, plaintiffs alleged that defendant Michael Ball committed

extortion by threatening to harm their professional reputation. Extortion, a criminal offense,

cannot be pleaded as a cause of action in a civil action (*see Crandall v Bernard, Overton &*

*Russell,* 133 AD2d 878 [1987]). To establish tortious interference with prospective business

relations, as alleged under the second cause of action, a plaintiff must establish that:

> "(1) it had a business relationship with a third party; (2) the defendant knew of
> that relationship and intentionally interfered with it; (3) the defendant acted solely
> out of malice, or used dishonest, unfair, or improper means; and (4) the
> defendant's interference caused injury to the relationship" (*Carvel Corp. v*
> *Noonan,* 350 F3d 6, 17 [2003]).

Conduct constituting the tort is not directed at the plaintiff but at a party with which plaintiff has

or seeks to have a relationship (*Carvel Corp. v Noonan,* 3 NY3d 182, 192 [2004]). Plaintiffs'

1

tortious interference claim is not viable because it is based upon threats communicated to plaintiffs by Ball. Moreover, the claim cannot be based upon interference with plaintiffs' relationship with Ball's company, defendant Rock & Republic Enterprises, Inc. (RRE) because RRE is not a "third party." Prima facie tort, which is alleged under the third cause of action, consists of : (1) the intentional infliction of harm, (2) resulting in special damages, (3) without excuse or justification, (4) by an act or series of acts which are otherwise legal (*Cardo v Bd. of Mgrs., Jefferson Vil. Condo 3*, 29 AD3d 930, 931 [2006]). This claim is also deficient because plaintiffs have not alleged or demonstrated that they have suffered a "specific and measurable loss" (*see id.*). Plaintiffs have made no showing that defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Therefore the claim of intentional infliction of emotional distress alleged under the fourth cause of action is not viable (*see Murphy v Am. Home Prods. Corp.*, 58 NY2d 293, 303 [1983]). Plaintiffs allege under the fifth cause of action that RRE breached an agreement which purportedly gave plaintiff exclusive rights with respect to an advertising campaign. At paragraph 30 of the complaint, plaintiffs state the following: "Attached as <u>Exhibit 'A'</u> is *the* [emphasis added] parties' agreement." The agreement obligates RRE to do nothing more than pay the sum of $37, 550 in exchange for services described therein. It makes no mention of the exclusive rights plaintiffs claim to have been granted. The agreement coupled with RRE's canceled check in the specified sum constitute a defense founded upon documentary evidence. Moreover, the existence of the contract precludes plaintiffs' unjust enrichment cause of action (*Katz v Am. Mayflower Life Ins. Co.*, 14 AD3d 195, 201-202 [2004]).

2

For the foregoing reasons, the fifth cause of action by which plaintiffs allege breach of contract is dismissed pursuant to CPLR 3211 (a)(1). It is adjudged and declared that RRE has not breached its agreement with plaintiffs. The remaining causes of action are dismissed pursuant to CPLR 3211 (a)(7). Notwithstanding plaintiff's request, the provision for leave to replead set forth under CPLR 3211 (e) was repealed as of January 1, 2006 by L. 2005, ch. 616 (*Andux v Woodbury Auto Park*, 30 AD3d 362, 363 [2006]). Settled judgment and order.

Dated: November 9, 2007

J. S. C.

HON. LELAND DeGRASSE

3